STEPHEN N. SIMONSON *v.* SAMUEL KISSICK.

A writing in the following words, viz.: "This is to certify that I, A., sell to B., for the sum of $17,000, the house (describing it), and that I have received $75, the balance to be paid in thirty days," was signed by both A. and B., and was accepted by B., who paid to A. the $75; *Held,* in an action against A. (the seller) by a broker, to recover his commission for effecting the alleged sale, that the signing of the instrument by B., and the payment of the $75, was sufficient to show an agreement on his part to purchase the house at the price named, which a court of equity could specifically enforce; and that, accordingly, the broker was entitled to his commissions as for a sale effected.

APPEAL by defendant from a judgment of the general term of the Marine Court, affirming a judgment entered on the verdict of a jury at trial term, upon the direction of a judge.

The action was brought by the plaintiff to recover commissions as a broker on effecting a sale of land for defendant.

The following facts appeared on the trial:

The defendant employed the plaintiff, a broker, to procure a purchaser for the defendant's house, at a specified price; and the plaintiff made many efforts to sell it at the price fixed, but without effect. The defendant then reduced the price to $17,000, and told the plaintiff that he might sign a contract for the sale of it, if he found a purchaser at that price. After this understanding, one Peter Gilmore came to the plaintiff, and asked him if he had the house for sale. The plaintiff replied that he had. Gilmore then said, I will give you $17,000 for it; and the plaintiff replied, "that will buy it, the house will be yours," and he gave him the defendant's name. Gilmore afterwards saw the defendant, who wanted $17,500. Gilmore offered $17,000; whereupon an instrument in writing was drawn up, and signed by both parties, which was in these words, ".This is to certify, that I, Samuel Kissick (the defendant), sell to Peter Gilmore, &c., for the sum of $17,000, the house (describing it), and that I have received the sum of $75, the balance amounting to $16,925 to be paid in thirty days."

It appeared that the house originally belonged to one William Gilmore, who sold it to the defendant, Kissick, and that Peter Gilmore, the purchaser, was induced to buy it, that he might thereby get $1,000 which William Gilmore owed him. William Gilmore had told him that he would pay the $1,000 when the house was sold; and Peter Gilmore intended to become himself the purchaser, that he might secure this debt, by deducting the $1,000 from the purchase money. With this view he went to William Gilmore, who told him that the house had passed out of his hands, and that he had nothing more to do with it; and the defendant having put the property in the plaintiff's hands for sale, Peter Gilmore went to the plaintiff, as before stated, and the result of his communicating with him was the interview with the defendant, the payment to him of the $75 upon the purchase by Peter Gilmore, and the execution of the instrument before described.

After the execution of the instrument, Peter Gilmore, the purchaser, told the defendant that he wished to have deducted from the purchase money the $1,000 which William Gilmore owed him, and also $1,000 which William Gilmore owed to a person named Orr; and the defendant answered that he would allow the $2,000 to be deducted from the amount to be paid, if William Gilmore would allow it to him. This however, it would appear, the defendant afterwards refused to do. Mr. Martin, the defendant's attorney, proposed to draw a new contract; but Peter Gilmore, the purchaser, declared that he would keep the one he had, unless provision was made in the new contract for the deduction from the purchase money of the $1,000 which William Gilmore owed him; and in this condition matters stood until the end of the thirty days named in the written instrument, when the defendant offered what he called a deed to Gilmore, which the latter refused to take, unless the two sums before referred to were deducted from the purchase money, to which the defendant would not consent; and Gilmore thereupon refused to take the property. Upon this state of facts the jury, under the instruction of the court, found a verdict in favor of the plaintiff for the amount of his commission.

Simonson v. Kissick.

*William R. Martin*, for appellant.

I. The signature of the alleged purchaser to the paper did not impose any obligation upon him. He is not described in the paper as a party to it, and there are no words that bind him to anything, or by which he undertakes or agrees to anything (*Thomas* v. *Gumaer*, 7 Wend. 43; *Ackley* v. *Hoskins*, 14 Johns. 374).

The legal effect of the paper was, that the vendor was bound to sell for $17,000 cash, for thirty days; that is, he gave the proposed purchaser an option. While the proposed purchaser held that paper, he might come, within the fixed period, and pay in cash the specified sum, and demand the deed; and for this option he paid the $75.

II. On that paper alone, as an *express contract*, the vendor could not have compelled performance by the purchaser. The assent of the parties to an agreement must comprehend the whole of the proposition; it must be exactly equal to its extent and provisions. This assent must be expressed, and it must be expressed to an agreement which is obligatory on the party (2 Parsons' Cont. p. 475-6; see *McCotter* v. *Mayor*, &c., 37 N. Y. 325; *Myers* v. *Smith*, 48 Barb. 614; *Trevor* v. *Wood*, 41 Barb. 255; 36 N. Y. 307; *Booth* v. *Bierce*, 38 Id. 463; *Dana* v. *Munro*, 38 Barb. 528; *Baldwin* v. *Mildeberger*, 2 Hall, 176; *Tuttle* v. *Love*, 7 Johns. 470).

*C. W. Town*, for respondent.

By the Court.*—Daly, Ch. J.—The commission of the broker is earned when he procures a purchaser for the property at the price named, who is willing and able to take it. The purchaser's ability is to be assumed, unless the contrary appear; and when a contract in writing for the sale of the property, at the price asked, is signed by the owner and the purchaser, the broker has earned his commission, and his right to it is in no way affected by the subsequent refusal of the purchaser to fulfil the contract (*Glentworth* v. *Luther*, 21 Barb. 145).

---

\* Present, Daly, Ch. J., Larremore and J. F. Daly, JJ.

Vol. IV.—10

That this is the law is not disputed by the defendant; but he insists that the instrument in writing, though signed by Peter Gilmore, did not impose upon him any obligation to purchase the property; that he is not described in the instrument as a party to it; and that there are no words in it that bind him to anything, or by which he undertakes or agrees to do anything; that the legal effect of the instrument was, that the defendant was bound to sell the property for $17,000 cash in thirty days, and that the purchaser might come at any time within that period, pay the purchase money, and demand the deed; for which right of option, election, or choice, he paid the $75 acknowledged in the instrument to have been received by the defendant.

There is nothing upon the face of this instrument to show that this was a sale at the purchaser's option. The language used shows that it was an unconditional sale on the part of the defendant, except in the single feature that the balance of the purchase money was to be paid in thirty days. This is the plain import of the words, " This is to certify, that I, Samuel Kissick, *sell* to Peter Gilmore, for the sum of $17,000, the house" (describing it), followed by the acknowledgment of a receipt of a part of the purchase money in these words: " and that I have received the sum of $75," and that this was understood to be a partial payment of the purchase money, in my judgment, plainly appears from what succeeds: "the balance amounting to $16,925 to be paid within thirty days."

There is no uncertainty here, either in respect to the property, the price or the time of payment. This agreement is in writing, the consideration appears upon the face of it, and there is an acknowledgment that a part of it has been received. This is not an offer by the defendant to sell, or a proposal to sell at the buyer's option within a given period on certain terms, but, as I have said, it is an absolute agreement to sell, which a court of equity would compel the defendant to perform, even though the instrument had been signed by him only (Fry on Specific Performance, c. ii, p. 75).

In the case of an offer, the vendor is at liberty to retract if the offer is not accepted when made, unless upon a sufficient

consideration a specified time is given to the buyer to make his election, or the circumstances are such as show that it was necessarily understood that a reasonable length of time was to be given to him (*Mactier* v. *Frith*, 6 Wend. 103; *McCulloch* v. *The Eagle Ins. Co.* 1 Pick. 278; *Rontledge* v. *Grant*, 3 C. & P. 267; *Payne* v. *Cave*, 3 T. R. 148; *Eskridge* v. *Glover*, 5 Stew. & Post. 264; Story on Contracts, §§ 378 to 384).

In such a case the vendor cannot dispose of the property until the time limited has expired, unless the other party notifies him at an earlier period of his intention not to take it; the consideration received being sufficient to support the agreement on the part of the seller to keep the property until the time limited for the buyer to declare his option.   There is nothing upon the face of this instrument to show that the $75 was received by the defendant as a consideration for keeping the property thirty days that Peter Gilmore might have that time to elect whether he would take it or not.   He had that time to pay the balance of the contract price, and that is all that can be gathered from the words of the instrument; and if his signature to the instrument is evidence of an acceptance, or, to express it more precisely, of his agreement to purchase the house upon the terms stated, an action could be maintained against him for damages or specific performance enforced in equity, the rule being that in contracts for the sale of land, the remedy in equity is mutual, and that the vendor can enforce the contract in all cases where the purchaser could sue for specific performance (Fry on Specific Performance, § 23; *Walker* v. *Eastern Co. R. Co.* 6 Hare, 594; *Withy* v. *Cottle*, 1 Sim. & Stu. 173; *Kenny* v. *Wexham*, 6 Mad. 356).

The signing of the instrument by Gilmore, and the payment of the $75, is sufficient to show an acceptance and an agreement by him to purchase the house at the price fixed upon.

"It does not matter," says Story, " by what mode assent is expressed, provided it be intelligible, and it may be given by a nod, by shaking hands, taking off a shoe, drawing a shilling across the hands, &c." (Story on Contracts, § 378).   He is, of course, speaking of verbal contracts.   But here there was a payment of a part of the purchase money, and a delivery to

Gilmore, and the acceptance by him, of an instrument in writing binding upon the defendant, and to which Gilmore subscribed his own name. Blackstone has pointed out the great regard which the law has always attached to the payment of earnest as evidence of a contract to buy (2 Bl. Com. 448), and Gilmore's subscribing his name to the instrument could have been for no other purpose than to indicate his consent to purchase the house upon the terms agreed upon.

The defendant has called our attention to the case of *Ackley* v. *Hoskins* (14 Johns. 374), in which it was held that a father by signing an indenture for the apprenticeship of his son, did not bind himself for the performance of a covenant in the instrument that the son would faithfully serve the master until he was twenty-one years of age. But the reason given for that decision clearly distinguishes it from the present case. The signature of the parent was necessary by statute to make the indenture binding upon the apprentice. The statute does not require any covenant on the part of the parent, but "has," in the language of the court, "furnished the master with the power of enforcing obedience from his apprentice, and compelling him to the performance of his stipulated service." The father might not be willing to bind himself to the performance of the stipulations contained in the indenture. "When, therefore," said the court, "we can account for the father signing, without making him a party to the covenant, we ought so to consider his meaning." A like decision was rendered in *Blunt* v. *Melchor* (2 Mass. 228), and it was held in a very early American case that a guardian signing the indenture could not release the master's covenant to pay the apprentice a certain sum at the expiration of his term (*Duntons* v. *Richards*, Quincy's Mass. Rep. 1761 to 1772, p. 67), all of which cases proceeded upon the ground that there was a reason for the parent or guardian signing the indenture, independent of being a party to the covenant.

But in the present case, we cannot account for Gilmore's putting his name to this instrument, except it were for the purpose of expressing that he agreed to purchase the house upon the terms stated in the writing. "What is necessary," said the

court, in *Thomas* v. *Blackmore* (1 Col. C. C.), "is, that there should be a clear accession on both sides to the same set of terms;" and this took place as effectually when Gilmore put his name to the instrument as if the words, "and I Peter Gilmore *buy*," had been contained in the instrument after the words, "I Samuel Kissick *sell*." After paying the defendant a part of the purchase money, no other meaning but this could be attached to his subscribing his name to the paper, and taking it into his possession. A party who pays part of the purchase money, and afterwards refuses or neglects, without legal excuse, to pay the rest and take the deed, cannot recover back what he has paid, but that is because of his wrongful act in not fulfilling the contract, and not upon any assumption that the amount so paid is a consideration for the exercise of an option to take the property or not.

The judgment should be affirmed.

Judgment affirmed.