(109 App. Div. 20.)

### BENEDICT v. PINCUS et al.

(Supreme Court, Appellate Division, First Department. November 17, 1905.)

1. BROKERS—COMPENSATION—SUFFICIENCY OF SERVICES.

   A paper signed by a principal and a proposed tenant stipulated: "We agree to execute a lease of" certain premises to such tenant "from October or November, 1906, for seven years, at a rental of $18,000 per year; the lease as to conditions to be an exact copy of the lease we now hold on the above premises (by the conditions it means taxes, insurance, if in lease), the running expense, etc., included. It is understood that at signing of lease, six months rent in advance is to be paid" by the tenant, "this to draw 6 per cent. yearly in advance; principals to secure the proposed tenant for above amount by the assignment of lease of the premises now existing, providing this can be done, or other security. Lease to be executed on or before October 10, 1902." *Held*, that the instrument was a mere option, in no way obligating the proposed tenant, and the procuring of his signature thereto was not a

compliance on the broker's part with a contract between the broker and his principal, whereby the broker was to become entitled to a certain commission for procuring a tenant as such lessee of the premises in question, in which the principal had a leasehold interest.

2. SAME—ACTION—QUESTION FOR JURY.

In an action by a broker for commissions, evidence examined, and *held* that, whether there was a contract between the parties by which plaintiff's commission was not to become due until there had been a lease signed by the parties was a question for the jury.

3. EVIDENCE—PAROL—ADMISSIBILITY.

In an action by a broker for commissions alleged to be due under a contract, evidence to show that there was an agreement that no commissions were to be paid in the transactions until the lease of the premises in question was executed according to the terms of a writing signed by the defendants, is not objectionable, as contradicting or varying the terms of the agreement, where there was nothing in the agreement referring in any way to commissions.

4. APPEAL—GROUND OF REVIEW—RESERVATION IN LOWER COURT—SUFFICIENCY.

When a request is made to go to the jury on a question of fact, and it is denied and an exception is taken, it is unnecessary to go through the idle ceremony of excepting to the direction of the verdict, under penalty of being deprived of the exception to the erroneous ruling.

Appeal from Trial Term, New York County.

Action by Julian Benedict against Louis Pincus and another. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

John W. Weed, for appellants.

John Frankenheimer, for respondent.

McLAUGHLIN, J. This action was brought to recover commissions alleged to have been earned by the plaintiff in procuring, as a broker for the defendants, a tenant as sublessee of certain premises in which they had a leasehold interest. The complaint alleged the employment of the plaintiff, and that he found one Smith, who was able, ready, and willing to execute and fulfill the provisions of the lease on terms named by the defendants, and entered into a preliminary agreement for such lease, of which the following is a copy:

"New York, Sept. 26, 1902.

"We agree to execute a lease of premises 40 W. 34th to R. Smith from October or November, 1906, for 7 years, at a rental of $18,000 per year; the lease as to conditions to be an exact copy of the lease we now hold on the above premises (by the conditions it means taxes, insurance, if in lease) the running expense, etc., included. It is understood that at signing of lease, 6 mos. rent in advance is to be paid by R. Smith, this to draw 6 per cent. yearly in advance. L. & A. Pincus is to secure R. Smith for above amount by the assignment of lease of 40 West 34th St. now existing, providing this can be done, or other security. Lease to be executed on or before October 10, 1902.        Louis Pincus.

"Alexander Pincus.

"R. Smith.

"In presence of Julian Benedict."

The evidence on the part of the plaintiff showed no performance on his part other than obtaining the agreement referred to. No evidence was offered to the effect that any lease was in fact executed by Smith, or that six months' rent, amounting to $9,000, to be paid in

advance by him under the terms of the agreement, was paid. The defendants' answer denied the employment of the plaintiff, admitted the signing of the agreement, but alleged that before signing the same plaintiff was informed by defendants that he would not earn his commissions unless Smith complied with the agreement, and plaintiff then stated that he would have no claim for commissions against defendants until Smith carried out the arrangement for a lease, and thereupon the defendants signed the agreement. The defendant Alexander Pincus testified that, before the paper was signed, he stated to the plaintiff that he wished "him to understand that no commissions are to be paid in this transaction until this lease is executed according to the terms in that paper, and Mr. Benedict said that was satisfactory to him, and, when he said that, I signed the paper." The plaintiff contends that he had earned his commissions by procuring a person able, willing, and ready to take a lease, and that the agreement referred to established that fact. Defendants contend that the agreement was not equivalent to procuring a person to take a lease, as it was not enforceable against Smith.

At the conclusion of the trial, two issues were presented—one of law in regard to the effect of the agreement, and one of fact as to whether or not the contract between the parties was that the commissions were not to be paid until the lease was in fact signed. The Trial Court, on motion of the plaintiff's attorney, directed a verdict in favor of the plaintiff, notwithstanding the defendants asked to go to the jury on the question of fact. This request was denied, the court remarking: "I find no evidence to sustain that proposition," and defendants excepted.

I am of the opinion that the judgment appealed from must be reversed for two reasons: First. Plaintiff never performed the agreement set out in his complaint. The agreement, which was signed by the defendants and Smith, was an option merely in favor of Smith, and imposed no obligation on him to take a lease. It could not have been enforced against Smith. The word "we," used in the agreement, refers solely to the defendants. Smith did not obligate himself to do anything. It was, at most, therefore, an option in his favor, which in no way bound him to comply with its terms. Within the authority of Condict v. Cowdrey, 139 N. Y. 273, 34 N. E. 781, Gerding v. Haskin, 141 N. Y. 514, 36 N. E. 601, Milstein v. Doring, 102 App. Div. 349, 92 N. Y. Supp. 417, and Ward v. Zborowski, 31 Misc. Rep. 66, 63 N. Y. Supp. 219, the commissions were never earned, and the plaintiff, therefore, cannot maintain the action.

An error was also committed at the trial which necessitates a reversal of the judgment. At the conclusion of the charge, the defendants' attorney made the following request:

"I would ask your honor to allow me to go to the jury on the question of whether there was not a contract between these parties by which plaintiff's commission was not to become due until there had been a lease signed between the parties."

This request was denied, the court remarking, "I find no evidence to sustain that proposition," and an exception duly taken. There was evidence to this effect, which was the testimony of Alexander Pincus, before referred to. A question of fact was thus presented, which

should have gone to the jury. It will be observed that there is nothing in the written agreement which refers in any way to commissions. Therefore, it could not be urged that this contradicted or varied the terms of the agreement. But it is said this exception is unavailing, inasmuch as the defendants' attorney did not except to the direction of a verdict. He had made a proper request to go to the jury, which had been refused and an exception taken. That exception was not destroyed because he did not subsequently except to the direction of a verdict. When a request is made to go to the jury upon a question of fact, and it is denied and an exception taken, it is unnecessary to go through the idle ceremony of excepting to the direction of a verdict, under penalty of being deprived of the exception to the erroneous ruling. If the exception is good, the party has a right to rely upon it.

The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellants to abide event.

PATTERSON and INGRAHAM, JJ., concur.

O'BRIEN, P. J. I concur on the ground that it was error not to submit to the jury the question as to when the commissions were payable.