JULIAN BENEDICT, Appellant, *v.* LOUIS PINCUS et al., Respondents.

1. OPTIONS AND CONTRACTS THEREFOR — THEIR NATURE AND EFFECT. An option is an exclusive privilege to buy, and a contract for an option is the agreement by which the privilege is created, sometimes defined as a continuing offer, binding for the time specified the one who made it, but not the one to whom it is made, unless he accepts it, when it becomes binding upon both. It neither transfers nor agrees to transfer title to property, but confers the bare right to accept an offer within the time limited and upon the terms provided; no obligation is assumed by the holder of an option and no promise is made in the contract therefor except by the one making the offer or granting the privilege, and the words used are wholly his own. While there are two parties, it is unilateral in form and nature and is signed by but one, the other becoming a party by paying the consideration and accepting the instrument.

2. CONTRACT — CONSTRUCTION OF ALLEGED AGREEMENT FOR A LEASE — ESTOPPEL — ERRONEOUS DISMISSAL OF COMPLAINT. Where, in an action to recover commissions alleged to have been earned by the plaintiff as a broker in procuring a tenant ready and able to take a lease of certain premises, the complaint is dismissed at the opening of the trial so that the question, whether it alleged facts sufficient to constitute a cause of action depends upon the inquiry whether a certain paper set forth in the complaint is a binding contract between the defendants and the proposed tenant or merely an option, and it appears that the instrument was signed by both parties; that it was treated by both, not as an option, but as an agreement for a lease; that the plaintiff alleged in his complaint that it was "a preliminary agreement for a lease;" that seven times in their answer the defendants referred to it specifically as an "agreement for a lease;" that when they swore to their answer they evidently regarded it as an enforceable contract, at least in form, and, admitting it to be such, pleaded certain facts in avoidance; that neither the word "option" nor any word

of like meaning appears in the paper or in the pleadings; and that the signatures of both parties indicate a mutual agreement binding upon both, not a unilateral promise binding but one; such acts constitute a practical construction of the instrument by the parties themselves, which reflects light upon their intention, for they knew what they wanted and evidently thought they had expressed it when both affixed their signatures, and the courts should not hold that there was no contract when the parties admit by their signatures and pleadings that they made one; the granting of the motion for a nonsuit was, therefore, erroneous and the judgment should be reversed.

*Benedict* v. *Pincus,* 113 App. Div. 903, reversed.

(Argued February 26, 1908; decided March 10, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 17, 1906, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term.

This action was brought to recover commissions alleged to have been earned by the plaintiff as a broker in procuring a tenant ready and willing to take a lease from the defendants of certain premises in which they had a leasehold interest with the right to sublet the same. Among other allegations the complaint contained the following:

"That the said defendants are indebted to said plaintiff in the sum of $1,260, with interest thereon from the 14th day of October, 1902, for work, labor and services done and performed for the said defendants, at their special instance and request, at said city, by the said plaintiff, at divers times between the first day of September, 1902, and the 26th day of September, 1902, as a real estate broker, for finding and procuring a person who was ready, willing and able to lease from said defendants, on their terms, said premises, for the term of seven years, from October or November, 1902; that the said defendants employed said plaintiff as such real estate broker to lease said premises for said term of seven years, as aforesaid, or to find or procure a lessee thereof, and agreed to pay said plaintiff, if he procured a person ready, willing and able to take a lease thereof, as aforesaid, the customary com-

mission of one per cent on the total amount agreed to be paid by such person under the terms of such lease; that said plaintiff, as such broker, did find a person, one Robert Smith, ready, willing and able to execute and fulfill the provisions of such a lease, on the terms as specified by said defendants, and thereupon and on the 26th day of September, 1902, said Smith and said defendants entered into a preliminary agreement for such a lease, of which agreement the following is a copy:

" ' New York, *Sept. 26th,* 1902.

" ' We agree to execute a lease of premises No. 40 West 34th Str., to R. Smith, from October or November, 1902, for 7 years, at a rental of $18,000 per year, the lease, as to conditions, to be an exact copy of the lease we now hold on the above premises (by the conditions it means taxes, insurance) (if in lease) running expenses, etc., included; it is understood that at signing of lease — 6 mos. rent in advance is to be paid by R. Smith, this to draw 6% yearly in advance; L. & A. Pincus is to secure R. Smith for above amount by the assignment of lease 40 West 34th St., now existing (provided this can be done), or other security. Lease to be executed and signed on or before October 10th, 1902.

         " ' (Signed)      LOUIS PINCUS,
         " ' (Signed)      ALEXANDER PINCUS,
         " ' (Signed)      R. SMITH.

" ' In the presence of

      " ' Julian Benedict.' "

The answer, after denying certain allegations, admitted a contract with the plaintiff differing in some respects from the one set forth in the complaint and then continued as follows: " That thereafter the plaintiff called upon these defendants and stated to them that he had found one Robert Smith, who was ready, willing and able to execute and fulfill the provisions of a lease on the terms as specified by said defendants and requested the defendants to go with him, the plaintiff, to see the said Robert Smith. That thereafter and on September 26th, 1902, defendants did go with the plaintiff to

see said Robert Smith, and at said interview the plaintiff drew up *an agreement for a lease* upon the terms of the defendants, to be executed by the defendants and the said Robert Smith, and which agreement for such a lease was then and there signed by the defendants and the said Robert Smith," a substantial copy of which, as it was admitted, is set forth in the complaint. " That when the agreement for said lease was drawn by plaintiff and before defendants signed same, the plaintiff was informed by defendants that he would not earn his commission unless the said Robert Smith complied with the said agreement for a lease by his executing a lease upon the terms of the agreement for a lease entered into between defendants and the said Robert Smith drawn by the plaintiff, and had paid the money required of him by the terms of said agreement; thereupon the plaintiff stated to the defendants that he had no claim for commissions against the defendants until the said Robert Smith carried out the agreement for a lease by executing the lease provided for in said agreement and paying the money therein required to be paid by him on the execution of the lease so as to enable the defendants to pay plaintiff his commissions therefrom, and with that understanding these defendants signed said agreement for a lease." The answer further alleged that the said Robert Smith subsequently refused to execute a lease although the defendants had " always been ready and willing to carry out the terms of said agreement, and are now ready and willing to carry out all the terms of said agreement on their part, and were ready on the 10th day of October, 1902, and have been ready ever since that time, and are now ready to sign and execute a lease in accordance with the terms of said agreement."

Upon the trial, before any evidence was taken, the court, on motion of the defendants, dismissed the complaint because the writing set forth therein " was an option, not an agreement for a lease." The plaintiff offered to introduce evidence, but the court refused to allow it, stating that " the matter as it is now before me is not upon the question of admission or rejec-

tion of testimony, but it is here upon a motion to dismiss the complaint before you have opened your case. Therefore, nothing can go upon this record except that motion and my decision on it, and I will permit nothing else to go on the record."

Exceptions were duly taken to these rulings. Upon appeal to the Appellate Division the judgment dismissing the complaint was affirmed, but leave was granted to appeal to this court.

*John Frankenheimer* and *Robert L. Stanton* for appellant. The contract set forth in the complaint was not an option. The answer not only failed to raise this issue, but expressly admitted that the contract was an agreement for a lease. To construe the contract as an option would be contrary to the clear intention of the parties to it, would reduce it to a *nudum pactum*, and would violate the cardinal principle of construction that contracts are to be supported rather than defeated. (*Milstein* v. *Doring*, 102 App. Div. 349; *Clark* v. *Dillon*, 97 N. Y. 370.; *Solomon* v. *Vallette*, 152 N. Y. 147; *Teall* v. *C. E. L. Co.*, 119 N. Y. 645; 2 Pars. on Cont. 503; *A. C. Bank* v. *Leonard*, 40 Barb. 119, 134; *Mayor* v. *Cooper*, 17 J. & S. 409, 413; *Russell* v. *Allerton*, 108 N. Y. 283, 292; *Jugla* v. *Trouttet*, 120 N. Y. 21; *Wright* v. *Reusens*, 133 N. Y. 298; *Gillett* v. *Bank of America*, 160 N. Y. 549; *Schoelkopf* v. *Coatsworth*, 166 N. Y. 77.) The instrument set forth in the complaint was an agreement for a lease, and was binding on Smith. (*Atwood* v. *Cobb*, 16 Pick. 229; *Ellis* v. *Miller*, 164 N. Y. 434; *Higginson* v. *Weld*, 80 Mass. 165; *Fraser* v. *Davis*, 11 S. C. 56; *Barkow* v. *Sanger*, 47 Wis. 507; *House* v. *Howell*, 6 N. Y. Supp. 799; *Sykes* v. *City Sav. Bank*, 115 Mich. 321; *Mitchell* v. *N. R. B. & L. Assn.*, 49 S. W. Rep. 624; *Winslow* v. *D. L. Co.*, 32 Minn. 237; *Gassett* v. *W. U. T. Co.*, 92 Iowa, 449.)

*John W. Weed* and *Charles Meyers* for respondents. The complaint does not state facts constituting a cause of action,

because the allegation of performance by obtaining the signing of the paper set forth in the 5th paragraph of the complaint did not show a fulfillment of the plaintiff's employment. (*Ward* v. *Zborowski*, 31 Misc. Rep. 66; *Milstein* v. *Doring*, 102 App. Div. 349.) The words, "it is understood," in the option do not make it an agreement that was binding on R. Smith. (*Higginson* v. *Weld*, 80 Mass. 165; *Fraser* v. *Davis*, 11 S. C. 56; *Barkow* v. *Sanger*, 47 Wis. 507; *House* v. *Howell*, 6 N. Y. Supp. 789; *Sykes* v. *Savings Bank*, 115 Mich. 321.) The mere signature of R. Smith to the option does not impose any obligation upon him in the absence of language imposing it. (*Simonson* v. *Kissick*, 4 Daly, 143; *Ellis* v. *Miller*, 164 N. Y. 434.)

VANN, J. The trial court refused to allow the plaintiff to give evidence or make proof, because it felt bound by the decision of the Appellate Division, made upon a previous appeal, that the paper set forth in the complaint was an option and not an agreement for a lease. (109 App. Div. 20.) As the complaint was dismissed upon the opening the question presented for decision is whether it alleges facts sufficient to constitute a cause of action. I agree with my brother HAIGHT that the determination of that question depends upon the inquiry whether the paper set forth in the complaint is a binding contract between the parties, or whether it is an option merely and to that question I now address myself.

An option is an exclusive privilege to buy and a contract for an option is the agreement by which the privilege is created. Sometimes it is defined as a continuing offer, binding for the time specified the one who makes it, but not the one to whom it is made, unless he accepts when it becomes binding upon both. It neither transfers, nor agrees to transfer title to property, but confers the bare right to accept an offer within the time limited and upon the terms provided. No obligation is assumed by the holder of an option and no promise is made in the contract therefor except by the one making the offer or granting the privilege and the words used are

wholly his own.  While there are two parties, it is unilateral in form and nature and is signed by but one, the other becoming a party by paying the consideration and accepting the instrument.  If the consideration is not expressed, it may be proved at the trial.

The instrument in question was signed by both parties and was treated by both, not as an option, but as an agreement for a lease.  The plaintiff alleged in his complaint that it was " a preliminary agreement for a lease" and seven times in their answer the defendants referred to it, specifically, as an " agreement for a lease."  When they swore to their answer they evidently regarded it as an enforceable contract at least in form, and, admitting it to be such, pleaded certain facts in avoidance.  Neither the word " option," nor any word of like meaning, appears in the paper or in the pleadings.  The signatures of both parties indicate a mutual agreement binding both, not a unilateral promise binding but one.  There was no reason why Smith should sign unless he intended to bind himself to execute a lease in accordance with the terms specified. As was said by the chief judge in a recent case, " The parties certainly thought they had made a contract, for they not only signed the written instrument, but took pains to have it witnessed." (*Ellis* v. *Miller*, 164 N. Y. 434, 438.)  The court should not hold that there was no contract when the parties admit by their signatures and pleadings that they made one.  Their practical construction of the paper reflects light upon their intention, for they knew what they wanted and evidently thought they had expressed it when both affixed their signatures.

Upon reading the paper we find that it opens with the words " We agree," and the context immediately following shows that they are the words of the Messrs. Pincus exclusively.  That part was their peculiar promise.  The wording then changes, for, as we read it, both parties unite in saying " It is understood."  Understood by whom ?  Clearly by those who signed the paper, the same as if the words were " It is understood by the undersigned."  What was under-

stood? Evidently, among other things, that Mr. Smith was to pay six months' rent in advance. Did he not promise to do this when he signed the instrument. The phrase "It is understood" is not limited by the context, but means the same as "It is agreed," and thus becomes the expression of both parties, not of one only. It does not mean simply that the Messrs. Pincus understood, but both they and Mr. Smith understood. This construction has the support of authority. (*Baldwin* v. *Humphrey*, 44 N. Y. 609, 614; *Barton* v. *McLean*, 5 Hill, 256, 258; *Richards* v. *Edick*, 17 Barb. 260, 263; *Simonson* v. *Kissick*, 4 Daly, 143, 148; *Higginson* v. *Weld*, 80 Mass. 165, 170.)

We think that the motion to nonsuit should not have prevailed either for the reason stated by the trial court or any other, but that the plaintiff should have been allowed to introduce evidence and try the action in the usual way.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HAIGHT, J. (dissenting). This action was brought to recover commissions as a broker for services alleged to have been rendered in procuring a tenant for the defendants' premises. The agreement, as alleged in the complaint, is in substance that the defendants employed the plaintiff as a real estate broker to lease the defendants' premises for the term of seven years from October or November, 1906, or to find or procure a lessee thereof; that the plaintiff, as such broker, did find one Robert Smith ready, willing and able to execute and fulfill the provisions of a lease, and that thereupon the following instrument was executed by the parties in the presence of the plaintiff:

"NEW YORK, *Sept.* 26*th*, 1902.

"We agree to execute a lease of premises No. 40 West 34th Str., to R. Smith, from October or November, 1902, for 7 years, at a rental of $18,000 per year, the lease, as to conditions, to be an exact copy of the lease we now hold on the above premises (by the conditions it means taxes, insurance)

(if in lease) running expenses, etc., included; it is understood that at signing of lease — 6 mos. rent in advance is to be paid by R. Smith, this to draw 6% yearly in advance; L. & A. Pincus is to secure R. Smith for above amount by the assignment of lease 40 West 34th St., now existing (provided this can be done), or other security. Lease to be executed and signed on or before October 10th, 1902."

Upon the trial, after the jury had been impaneled, the defendants moved for judgment upon the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action, and that motion was granted.

The complaint contains no allegation that Smith ever executed a lease or that he was willing to execute a lease on the 10th day of October, 1902, the time fixed for the execution thereof. The plaintiff contends that he fully performed his part of the agreement when he procured Smith to execute the paper in question, and that then he became entitled to his commissions; while on the part of the defendants it is claimed that they contracted for a lease, or a person who would execute a lease, and not for a lawsuit; that the paper in question was a mere option unenforceable, and that the commissions were not earned by the plaintiff until a lease, such as was contemplated by the parties, had been executed.

The question thus presented for our determination is as to whether the paper in question is a binding contract between the parties, or whether it is an option merely, without consideration and not binding upon Smith. The first sentence to which our attention is called is: " We agree to execute a lease  *  *  *  to R. Smith." The words " We agree " unquestionably have reference to the defendants Louis and Alexander Pincus and do not include Smith by requiring an acceptance or the performance of any act on his part. Indeed, nothing is to be found in the entire instrument in which he is required to execute a lease to pay any rent or perform any act with reference thereto unless it is found in the following : " It is understood that at signing of lease six months rent in advance is to be paid by R. Smith." It is now contended

that the word "understood" is to be given the meaning of the word "agreed" and that Smith, by signing the instrument, has, therefore, bound himself not only to execute the lease but also to pay six months' rent in advance. It may readily be conceded that there are cases in which the word "understood" is used synonymously with that of "agreed" and that contracts become mutual by reason of its being so used; but ordinarily the word "understood" is not properly used in a contract as expressing the agreement of parties. It is only when it is accompanied with some expression which shows that it constituted a meeting of the minds of the parties upon the subject of the contract, indicating their intent to be bound thereby, that it is given the force and meaning of the term "agreed." (*Camp* v. *Waring*, 25 Conn. 520, 527; *Ward* v. *Zborowski*, 31 Misc. Rep. 66.) What is the fair and reasonable construction that should be given to this sentence? It is "understood" that six months' rent is to be paid in advance. When? At the signing of the lease. But who has agreed to sign the lease? The defendants have so agreed, as is apparent from the first sentence appearing in the instrument, but Smith has not agreed to sign it; for he only understands that, at the signing of the lease, or in case he signs the lease, he is to pay six months' rent in advance. No consideration is expressed in the instrument or claimed to have been paid. My conclusion, therefore, is that the instrument was but an option merely, without consideration and was not an enforceable contract. It follows that the plaintiff had not earned his commissions by the producing of a person who was ready and willing to execute a lease upon the terms mentioned.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WERNER and HISCOCK, JJ., concur with VANN, J.; CHASE, J., concurs with HAIGHT, J.

Judgment reversed, etc.