**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2054**

TRAXYS NORTH AMERICA LLC,

       Plaintiff - Appellee,

    v.

CONCEPT MINING INCORPORATED,

       Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:1-cv-00029-JPJ-PMS)

Argued:  December 5, 2012      Decided:  February 19, 2013

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

Affirmed in part and reversed in part by unpublished opinion. Judge Agee wrote the opinion, in which Judge Duncan and Judge Davis concur.

Robert Hannen, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Canonsburg, Pennsylvania, for Appellant.  Wade Wallihan Massie, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

In this diversity-based breach of contract action, Concept Mining, Inc. ("Concept")[1] appeals a damages award of $4,167,760, and a prejudgment interest, attorneys' fees, and litigation expenses award of $547,518.19 in favor of Traxys North America, LLC ("Traxys"). The district court held that Concept breached its 2009 obligation to deliver coal to Traxys and that this breach excused Traxys from having to exercise an option to extend the obligation through 2010. It thus held Concept liable in damages to Traxys for both 2009 and 2010. Pursuant to the parties' agreement, Traxys was also entitled to recover prejudgment interest and "legal costs" arising from the breach. The district court construed this provision to include attorneys' fees, expert witness fees, and certain witness travel expenses.

For the reasons set forth below, we affirm the district court's judgment regarding the 2009 breach and attendant damages, but we reverse the district court's judgment as to a breach in 2010 or any resulting damages. In light of this disposition, and because we conclude the district court misconstrued the provision regarding recovery of "legal costs,"

---

[1] In 2008, ArcelorMittal acquired Concept; for simplicity, the opinion will refer simply to Concept.

we also vacate the district court's judgment concerning prejudgment interest, attorneys' fees, and certain litigation expenses, and remand the case in order for the district court to recalculate an appropriate award.

I.

In 2007, Concept and Traxys entered into a contract (the "Contract") in which Concept agreed to supply Traxys with approximately 4,000 tons of coal per month for a total of approximately 48,0000 tons in 2008. A Special Provisions Clause set forth reciprocal options to extend the Contract beyond 2008:

> This transaction has an additional two year term that is an integral part of the contract with a $5.00 (Five Dollar) collar for each year. Commencing on November 1, 2008, the Parties shall mutually agree to negotiate in good faith and attempt to agree upon a new Contract to be in effect for Contract year 2009. . . . If . . . Traxys is unwilling to pay $83.00 per ton fob car as a Base Price[,] . . . then [Concept] and [Traxys] agree this Agreement shall terminate on December 31, 2008.

(J.A. 23.)

In the fall of 2008, Traxys elected to extend the Contract one additional year when it sent Concept a letter agreeing to pay the high-end $5.00 collar of $83.00 per ton fob car of coal in 2009. Although the parties remained in contact throughout 2009, Concept did not deliver any coal to Traxys

3

toward the 2009 obligation. Neither party exercised the option to extend the Contract into 2010.[2]

In May 2010, Traxys filed the underlying complaint in the United States District Court for the Western District of Virginia alleging Concept had breached the Contract by failing, inter alia, to supply coal in 2009 and 2010.[3] Concept then filed a counterclaim alleging Traxys breached the Contract by thwarting delivery of the coal and thereby violating its duty of good faith and fair dealing. Both parties asserted they were entitled to damages based on the other party failing to fulfill its obligations during 2009 and 2010, which resulted in no coal being shipped for either year. At the heart of these claims lay the interpretation of the Special Provisions Clause, whether a binding Contract existed in 2009 and/or 2010, and which party (if either) breached the Contract in 2009 and/or 2010.

Following a bench trial, the district court entered judgment upon an opinion in favor of Traxys on its claim and

---

[2] Although the parties disputed some of these facts at various stages in the proceedings below, they do not dispute them on appeal.

[3] Traxys also sought damages for a small portion of coal Concept failed to deliver under the 2008 obligation. Concept does not raise any issue relating to the district court's findings regarding a partial 2008 default and damages arising therefrom, and as such this opinion does not address or affect the district court's disposition of Traxys' claims as to damages for the 2008 default.

4

against Concept's counterclaim. Traxys N. Am. v. Concept Mining, Inc., 808 F. Supp. 2d 853 (W.D. Va. 2011). The district court found that Concept's lead coal buyer for the Americas, Liem Hazoumé, had misinterpreted the Contract, which mistakenly "led him, on behalf of Concept, to take the position with Traxys that there was no binding agreement for 2009." Id. at 860. It further found that "Concept was obligated to deliver the 2009 tonnage" as a result of Traxys' exercise of the 2009 option, and that Concept materially breached the Contract by failing to deliver coal toward its 2009 obligation. Id. The district court concluded that Traxys' remedies for the breach included awaiting performance, and that it did not violate a duty of good faith by remaining silent, despite the fact that its "silence may have been in part strategic and sensitive to market considerations." Id. at 862.

The district court rejected Concept's argument that "Traxys' refusal to communicate . . . frustrated Concept's ability to fulfill its obligations." Id. at 863. This is so, the court concluded, because Traxys "advised Concept of its ability to accept any proposed delivery dates," id. at 864, and yet Concept never sent Traxys any such dates and thus had not "demonstrated its willingness to perform and [thereby] signified its intent to remedy its delinquency." Id. at 863.

5

In addition, the district court found that "[b]ecause Concept repudiated any obligation to deliver coal under the Contract after 2008 and was in breach of the Contract throughout 2009, Traxys was not required to give any notice of an election to take the 2010 tonnage." Id. at 860. The court concluded that Concept's "ongoing breach throughout 2009 had legal consequence for the parties' status in 2010." Id. at 865. Namely, it held that because Concept was in breach of contract in 2009, Concept had no right to demand performance of condition precedents to performance such as requiring Traxys to make "a futile election on the 2010 tonnage." Id. The court concluded Concept was liable to Traxys for its failure to deliver any coal during 2010.

On appeal, the parties do not dispute the district court's method of calculating damages. Broken out by year, the damages award consisted of $46,696 for 2008, $800,367 for 2009, and $3,324,697 for 2010, for a total award of $4,167,760. Id. at 866.

After entry of the damages judgment, Traxys moved for prejudgment interest, attorneys' fees, and other litigation expenses. The Contract provided that in the event of Concept's unexcused failure to perform, Concept would be obligated to pay "Legal Costs incurred by [Traxys]." (J.A. 27.) The parties disputed the definition of "Legal Costs," and whether it

6

included the attorneys' fees and litigation expenses. The district court found "that the plain meaning of 'Legal Costs' as used in the Contract includes expenses incidental to litigation, such as attorneys' fees and disbursements, as well as expert witness fees." Traxys N. Am., LLC v. Concept Mining, Inc., Case No. 1:10CV00029, 2011 U.S. Dist. LEXIS 108530 (W.D. Va. Sept. 22, 2011). It explained:

> [t]here would be no need to expressly provide in the Contract for the recovery of court costs to a prevailing party, since such costs would be recoverable as a matter of course. The additional recovery of "Legal Costs" in the Contract must include attorneys' fees and other normal litigation expenses.

Id. at *4. Concept did "not contest the [calculation] of the attorneys' fees and disbursements sought or the amount of the expert witness fees," which the district court concluded were reasonable. Id. It did, however, reduce "certain witness travel expenses." Id. at *4. Accordingly, the court awarded Traxys a total of $547,518.19 for prejudgment interest, attorneys' fees and disbursements, witness fees, and expenses. Id. at *5.

Concept noted a timely appeal from both orders, and we have jurisdiction under 28 U.S.C. § 1291.

7

## II.

In this appeal from a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo. Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). Contract interpretation is also subject to de novo review. Frahm v. United States, 492 F.3d 258, 262 (4th Cir. 2007). As a court possessing federal jurisdiction by virtue of diversity of citizenship, we apply state law in interpreting the Contract. See Universal Concrete Prods. v. Turner Constr. Co., 595 F.3d 527, 529 (4th Cir. 2010). Pursuant to the Contract's choice-of-law provision, the law of the state of New York controls in this case. New York has adopted the Uniform Commercial Code, N.Y. U.C.C. ("hereinafter U.C.C."), which applies to the Contract. See N.Y. U.C.C. Law § 2-101 et subseq.

## III.

Concept first contends the district court erred in concluding that it materially breached the Contract by failing to supply Traxys with coal pursuant to the 2009 obligation. It asserts that the failure to deliver coal does not constitute a material breach because Traxys' conduct excused Concept from any obligation under the Contract. To support this contention, Concept points to what it identifies as Traxys' systematic

8

avoidance and refusal to communicate with Concept in 2009. Concept argues the district court erred in failing to conclude that these acts by Traxys violated the duty of good faith and fair dealing. As a result of this claimed breach by Traxys, Concept contends it was excused from fulfilling any obligation to perform under the Contract.

To establish a prima facie case of breach of contract under New York law, a plaintiff must prove: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). Concept avers that Traxys failed to establish the second element of a prima facie case, that Concept's failure to deliver coal constituted a "breach" of the parties' contract in light of Traxys' conduct.

We have reviewed the record and conclude the district court did not err in holding that Concept materially breached the Contract and that Traxys was not in breach as to 2009. Concept was thus correctly found to be liable for damages arising from its failure to deliver coal to Traxys in 2009. Significantly, Concept's argument on appeal differs considerably from the position that it took both during the events in question and at various stages in the proceedings in the district court. While it now concedes that Traxys exercised the 2009 option and that the parties consequently had a binding

9

contract that year, that is not the position it previously held. The record unmistakably reflects that Concept's employee Hazoumé did not believe that Concept was obligated to deliver any coal toward a 2009 obligation because he did not believe the parties had a binding agreement covering that period of time. In communication after communication, he demonstrated his willingness to enter into a new agreement for 2009, but disavowed any existing obligation. Hazoumé's deposition testimony similarly reflects his mistaken interpretation of the Contract's Special Provisions Clause and the legal effect of Traxys' letter exercising the 2009 option, which led to his belief that there was not a binding contract for 2009. Hazoumé's communications to Traxys informed them that Concept did not intend to deliver coal toward a 2009 obligation. Moreover, because the Contract provided that Concept was to deliver approximately 4,000 tons of coal each month, at the end of each month in 2009 when Concept had not delivered any coal, Concept was in breach.

Contrary to Concept's argument, Traxys' conduct did not excuse Concept from the obligation to deliver coal in 2009. Notably, Concept's breach preceded the period of time during which it claims Traxys refused to communicate. See N.Y. U.C.C. Law § 2-610, cmt. 1 (stating that an anticipatory repudiation occurs "upon an overt communication of intention or an action

10

which renders performance impossible or demonstrates a clear determination not to continue with performance."). Upon Concept's prior breach, Traxys was entitled under U.C.C. § 2-610 to "await performance by the repudiating party" "for a commercially reasonable time." See also N.Y. U.C.C. Law § 2-610, cmt. 4 (discussing the right of a non-breaching party to choose "[i]naction and silence" so long as it does not mislead the breaching party). Furthermore, Concept overstates Traxys' "silence," as the record reflects that Traxys maintained communication with Concept throughout 2009 even though it channeled contact through one representative and that representative strategized as to how and when to communicate with Concept. The record also reflects that Traxys unequivocally informed Concept that it was "completely flexible on loading dates each month and [stood] willing to work with Concept on a loading schedule favorable to both parties. [Traxys] look[ed] forward to [Concept's] response as to when [it] will begin shipping tons." (J.A. 392.) That sentiment was repeated in numerous communications to Concept throughout 2009. Yet at no time did Concept suggest any potential loading dates—a duty that it had under the plain language of the Contract—in

order to initiate the process of scheduling transfer of the coal.[4]

At bottom, it was Concept's misperception that a contract did not exist rather than Traxys' behavior that resulted in a material breach of the Contract by Concept. The district court did not err in concluding that Concept, not Traxys, materially breached the Contract by failing to deliver coal in 2009.

IV.

Concept next contends the district court erred in determining it breached the Contract as to 2010 and in awarding damages arising from its failure to deliver coal for that year. It asserts the district court erred in excusing Traxys from the condition precedent to exercise the 2010 option by agreeing to the price collar set forth in the Special Provisions Clause.[5]

---

[4] Traxys also raises numerous arguments challenging the district court's conclusion Concept breached the Contract by failing to set a shipping date because the parties' course of performance modified the Contract's terms. We have considered those arguments and reject them for substantially the same reasons expressed in the district court's opinion. See 808 F. Supp. 2d at 863-64.

[5] Concept also challenges the district court's determination of what price the Special Provisions Clause set for 2010. Because we are reversing the court's decision on other grounds, we need not address that argument.

Concept maintains that because Traxys never formally exercised the 2010 option, no contract existed for that year. Consequently, Concept argues it cannot be held liable for damages arising from any failure to deliver coal during that year.

We agree that the district court erred in excusing Traxys from the Contract requirement to exercise the 2010 option and holding Concept in breach for failing to deliver coal in 2010. As noted, the Contract's original term ended at the end of December 2008. The Special Provisions Clause contained two one-year reciprocal options allowing the parties to extend the Contract under certain conditions. But unless either party exercised its option, there was no binding contract after December 31, 2008. An option contract is simply "an agreement to hold an offer open and [it] confers on the optionee . . . the right to purchase at a later date. While the optionor cannot act in derogation of the terms of an option agreement, the optionee is not bound until the option is actually exercised." 22 N.Y. Jur. Contracts § 55 (citing Kaplan v. Lippman, 552 N.E.2d 151, 153 (N.Y. 1990)). In exercising the option, however, the optionee must act strictly "in accordance with the time and in the manner specified in the option." Kaplan, 552 N.E.2d at 153.

13

Here, Traxys properly exercised a one-year option to extend the Contract through 2009. But because the Special Provisions Clause established two separate one-year options, Traxys was required to independently exercise the second one-year option before the Contract's term could be extended into 2010. Until Traxys exercised the option, Concept's only obligation was to hold open the sale offer; it had no duty to deliver coal in 2010 absent Traxys' proper exercise of the second one-year option. See Toroy Realty Corp. v. Ronka Realty Corp., 493 N.Y.S.2d 800, 882-83 (N.Y. App. Div. 1985) ("Ordinarily, option contracts create only unilateral obligations upon the seller to hold a sale offer open for the duration of the option. The obligations of the parties are transformed into a bilateral contract of sale only upon the exercise of the option[.]") (citing Benedict v. Pincus, 84 N.E. 284, 286 (N.Y. 1908)).

Traxys failed to provide the requisite notice to extend the Contract's duration beyond December 31, 2009. While Concept's breach in 2009 affected the parties' rights and responsibilities in 2009, it did not alter the Contract's duration or relieve Traxys of its independent duty to exercise the 2010 option if it so desired. The district court thus erred in concluding otherwise. Accordingly, we reverse the district

14

court's judgment with respect to the 2010 obligation and its award of damages to Traxys for that year.

V.

Concept's final challenge is to the district court's award of prejudgment interest, attorneys' fees, and certain witness-related litigation expenses. In light of our holding that the district court erred in awarding damages related to a 2010 breach of contract, this judgment would necessarily be vacated in order for the district court to reassess the matter based on the modified damages award.

Because it is almost assuredly going to arise during remand, we will briefly address Concept's argument regarding the district court's interpretation of the Contract's fee-shifting provision. See United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc., 675 F.3d 394, 406 (4th Cir. 2012) ("[O]ur precedent is clear that we may address issues that are likely to recur on remand."). Concept asserts the district court erred when it interpreted the Contract's provision permitting Traxys to recover "Legal Costs" as including attorneys' fees, expert witness fees, and certain witness travel expenses. It maintains that in light of New York case law holding that fee-shifting provisions must be strictly interpreted, the district court erred in construing "Legal Costs" to include these amounts when

15

it is not clear from the record that was the intention of the parties.

We agree that the district court's interpretation of the fee-shifting provision was too broad.[6]  Under New York law, "while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create."  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003).  Moreover, courts must not "infer a party's intention to waive the benefit of the [American Rule] unless the intention to do so is unmistakably clear from the language of the promise."  Hooper Assocs., Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989).

The Contract's fee-shifting provision provides that Traxys can recover "Legal Costs."  (J.A. 779.)  The term is unmodified and undefined.  Because legal costs could encompass or exclude a range of fees associated with the underlying litigation and the parties' intent is not clear from the plain language of the Contract, the term is ambiguous.  We believe the

---

[6] Although courts review the reasonableness of an attorneys' fee award for abuse of discretion, we review the court's interpretation of the Contract – i.e., whether it permits recovery of attorneys' fees and other costs – de novo. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 198 (2d Cir. 2003).

16

analysis of <u>U.S. Fid. and Guar. Co. v. Braspetro Oil Servs. Co.</u>, 369 F.3d 34 (2d Cir. 2004), to be persuasive on this point. There, the Second Circuit considered the precise issue presented in this case: whether a provision allowing recovery of "legal costs" encompassed attorneys' fees. After reviewing the relevant New York case law and finding nothing directly on point, the Second Circuit turned to three dictionary definitions of "legal costs," only one of which included "attorneys' fees." <u>Id.</u> at 74-77.[7] In the absence of any extrinsic evidence on point, and faced with "two, equally valid interpretations" of the provision, the Second Circuit concluded that "it [was] not unmistakably clear that the use of the term 'legal costs' in [the parties' contract] was intended to obligate" the breaching party to pay attorneys' fees. <u>Id.</u> at 77. As such, no recovery for attorneys' fees was permitted.

Similarly, here, the Contract calls for recovery of "legal costs" without any clear indication of what that term

---

[7] We note that <u>Black's Law Dictionary</u>, one of the three that the Second Circuit relied on, defines "cost" in three ways, none of which are particularly useful in determining whether the parties under the Contract intended for recovery of attorneys' fees. <u>Black's Law Dictionary</u> 349 (7th ed. 1999) ("1. The amount paid or charged for something; price or expenditure. . . . 2. (*pl.*) The charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees. . . . 3. (*pl.*) The expenses of litigation, prosecution, or other legal transaction, esp. those allowed in favor of one party against the other.").

encompasses. Traxys points to a declaration in the record from its employee Janet Billups, who drafted the Contract, in which she indicates that she intended for the provision to include attorneys' fees. However, this evidence is of limited value given the uncertainty as to what both parties intended for it to mean. Given that New York narrowly construes such fee-shifting provisions, and requires that it must be "unmistakably clear from the language of the promise," Hooper Assocs., Ltd., 548 N.E.2d at 905, what the parties intended, we conclude that the district court erred in interpreting the Contract to include attorneys' fees.

The parties' briefs focus on the appropriateness of including attorneys' fees as "Legal Costs" even though Concept also challenges the recovery of expert witness fees and witness travel expenses. Although this is perhaps a closer call, it is nonetheless a "call" given that the term used – "Legal Costs" – is ambiguous. As such, we also hold that the district court erred in concluding that the Contract was "unmistakably clear" in intending to encompass such expert witness fees and travel expenses. On remand, the district court should recalculate an appropriate amount of prejudgment interest and permissible "Legal Costs" to be allowed in conformity with this opinion.

VI.

For the aforementioned reasons, we affirm the district court's damages judgment in part and reverse it in part, and we vacate and remand the judgment relating to prejudgment interest and "Legal Costs" for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
VACATED AND REMANDED

19