## CHARLES N. CARTER *vs.* E. B. PHILLIPS.

Suffolk. Jan. 24, 25. — Feb. 25, 1887. C. ALLEN & HOLMES, JJ., absent.

A. was engaged in the business of "manufacturing, purchasing, and selling cloaks and garments and all materials therefor;" and B. was in his employ as manager, buying and selling stock and materials, and employing clerks, servants, and workmen, under an agreement between the parties by which it might "be terminated by either party, by giving to the other sixty days' notice in writing of the desire so to do." A. also agreed to give B. "the right and privilege to purchase, within the limit of time of such notice, the said business, at the cost price of the stock, of the fixtures and machines, and the lease of the premises" where the business was carried on. While the agreement was in force, A. wrote to B. as follows, "I give you sixty days' notice to leave my employ." On the last day of the sixty days, B. wrote to A. that "I have decided to avail myself of the right and privilege given me in our agreement to purchase the business," and asked A. to join with him "in ascertaining the cost and the amount to be paid by me;" but he made no tender or offer to pay the amount, and had not the

means or ability to pay the same. It was a matter of discussion between the parties at the inception whether the time should be fixed at thirty or sixty days, and, when about half of the sixty days after giving the notice had expired, A. called B.'s attention to the notice, and urged him, if he intended to make the purchase, to be making his preparations to do so, and B. asked for an extension of the time. *Held,* that time was of the essence of the contract; and that B. could not maintain a bill in equity against A. for specific performance of the contract.

MORTON, C. J. The parties to this bill in equity, which was filed on May 18, 1886, in October, 1885, entered upon a joint enterprise for the manufacture and sale of cloaks and other garments, under a written contract, which contained the following clause : " And by and between the above-named parties it is mutually agreed that the agreement may be terminated by either party, by giving to the other sixty days' notice in writing of the desire so to do ; but upon such notice by the said Phillips, he hereby agrees to give the said Carter the right and privilege to purchase, within the limit of time of such notice, the said business at the cost price of the stock, of the fixtures and machines, and the lease of the premises Nos. 35 and 37 Winter Street in said Boston under the terms and provisions thereof, the said Carter paying therefor the proper and fair proportion of any assessments and taxes assessed or laid on said premises, and any and all expenses incurred in connection with said lease, which the said Carter hereby agrees to do." The bill seeks the specific performance of this clause. Upon the hearing before a single justice, he ordered the bill to be dismissed, and the plaintiff appealed.

It appeared in evidence, that, on February 26, 1886, the defendant gave to the plaintiff a written notice in these words : " I give you sixty days' notice to leave my employ." Though not in the words of the contract, it is clear that this was intended as a notice of his desire to terminate the contract, and it was so understood by the plaintiff, for on April 26, 1886, he wrote to the defendant, " I have decided to avail myself of the right and privilege given me in our agreement of October 1, 1885, to purchase the business," &c. In the same letter, he asks the defendant to join with him " in ascertaining the cost and the amount to be paid by " him, but he made no tender or offer to pay the amount ; and the evidence justified the presiding

justice in finding that he had not the means or ability to pay for the business, either at that time or at any time before the bringing of this bill.

The contract provided that he should have the privilege of purchasing within sixty days after the notice by the defendant. As he did not offer, and was not able and ready, to perform his part of the contract, he cannot insist upon a performance by the defendant, if the rights of the parties are governed by their contract. *Irvin* v. *Gregory*, 13 Gray, 215.

But the plaintiff contends that time is not of the essence of the contract; and that, in equity, he ought to be permitted to perform his part of the contract within a reasonable time after the expiration of the sixty days. The equitable doctrine to which the plaintiff appeals has been recognized and acted upon in many cases in this court. As was observed by Mr. Justice Gray in *Barnard* v. *Lee*, 97 Mass. 92, this doctrine was formerly carried to an unreasonable extent, but in modern times it has been more guardedly applied; " and it is now held that time, although not ordinarily of the essence of a contract in equity, yet may be made so by clear manifestation of the intent of the parties in the contract itself, by subsequent notice from one party to the other, by laches in the party seeking to enforce it, or by change in the value of the land, or other circumstances which would make a decree for the specific performance inequitable."

In *Goldsmith* v. *Guild*, 10 Allen, 239, where the plaintiff agreed to pay for land " within ten days " from the date of the contract, it was held that time was of the essence of the contract, as the land was fluctuating in value from day to day. Mr. Justice Chapman says in the opinion, " But this doctrine applies to sales of property only in cases where time is immaterial to the value, and is urged only by way of pretence and evasion, and does not apply to a sale of property the value of which is subject to daily fluctuation." In applying this doctrine to any contract, a court of equity seeks to look through the language used to the real intentions and purposes of the parties; and if a time for performance is stipulated in the contract, and it appears that the parties intended to make such time an essential element of their agreement, the court will carry it into effect. To do otherwise

would be to enforce a different contract from that which the parties made.

In the case before us, the contract carefully stipulates the time of the notice for terminating it. It appeared in evidence that it was a matter of discussion between the parties at the inception whether the time should be fixed at thirty or sixty days; it also appeared that, after giving the notice, when about half of the sixty days had expired, the defendant called the plaintiff's attention to the notice, and urged him, if he intended to make the purchase, to be making his preparations to do so, and that the plaintiff asked for an extension of the time; all of which goes to show that the parties considered the sixty days' time as an essential element of their contract. The subject matter of the contract and the situation of the parties tend to show the same thing.

The business in which they were engaged was that " of manufacturing, purchasing, and selling cloaks and garments, and all materials therefor." The plaintiff was the manager, who bought and sold stock and materials, and employed clerks, servants, and workmen; he was to have the right of purchasing the business, including the stock, fixtures, and machines; the business and stock were fluctuating from day to day, and it was important that the defendant should know promptly, at the expiration of the sixty days, whether the plaintiff was to purchase. It cannot be contended that the plaintiff could continue the enterprise as the defendant's manager, and claim the compensation provided in the contract. His employment certainly ceased at the expiration of the sixty days. If he purchased, the defendant was at once relieved of all care and responsibility about the business. But, if he did not, the defendant must immediately take charge of the business, which required daily and hourly care, attend to employing servants and workmen, or employ a manager in place of the plaintiff, and, generally, must carry on the business. It is certainly an important matter to him whether he is doing this for himself or for the plaintiff. The plaintiff's failure to comply promptly with the contract changed the rights and responsibilities of the defendant. If we hold that time is not of the essence of the contract, the defendant would be exposed to uncertainty and risk; it would

materially change his rights and responsibilities, and it would be inequitable and unjust so to hold. Upon all the circumstances of this case, we are of opinion that it cannot be held that the time of the performance of the contract by the plaintiff stipulated therein was immaterial. The defendant had the right to insist that the purchase should be made within the sixty days. The plaintiff could not extend this time by writing to the defendant on the last day of the time limited that he had decided to avail himself of the right to purchase, when the evidence shows that he did not offer to complete the purchase, and was not ready or able to do so within the sixty days.

The plaintiff further contends, that the defendant agreed to extend the time within which the purchase might be made beyond the limit of sixty days. This is purely a question of fact. It is the familiar rule that the court will not set aside the finding upon questions of fact of the justice who heard the evidence and saw the witnesses, unless it is clearly shown to be erroneous. It is enough to say, upon this point, that we have examined the evidence, and see no reason to doubt that the finding of the presiding justice was warranted by it.　　*Decree affirmed.*

*J. Lowell & H. G. Nichols*, for the plaintiff.

*E. R. Hoar & W. E. Jewell*, for the defendant.