## EARLE MORGAN *vs.* J. MURRAY FORBES & another.

Suffolk.    October 21, 1920. — November 24, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Contract,* Construction. *Sale. Option. Equity Jurisdiction,* Specific performance.

A contract in writing dated on a May 30 recited that the owner of certain land with a house thereon "hereby agrees to sell to" the second party to the contract the land in question; that the price to be paid by the second party was $12,000 "on delivery of deed on or before September 1 . . . without interest;" that the second party "herewith has paid Five hundred dollars ($500) as bargain money, to be forfeited in case he fails to pay the balance of $11,500 on or before September 1;" that it was agreed that the second party might "enter upon the premises after ten days from the date hereof, to make repairs or additions to said house on the understanding that such repairs or additions shall belong to the estate free of charge, in case" the second party should "fail to complete his payment of $11,500 on or before September 1;" that the second party should "be responsible for all bills and charges incurred in making such repairs or additions, free from any mechanic's lien;" that the second party agrees "to take over the present insurance on said house on receipt of deed, paying *pro rata* for the unexpired portion of the policies and also the cost of Mechanics' Privilege for work contemplated;" that, "Should said house be destroyed or damaged by fire, before the final payment of $11,500 has been made, the insurance recoverable shall belong to" the second party "as if the purchase had been completed and deed given to him, and the fact of such destruction or damage shall not invalidate or affect the final payment of $11,500 for the land;" that the second party should pay one half of the local tax assessed for the current year; that an occupant then on the premises should remain until September 1 "or until the final payment of $11,500 has been made, in case she wishes to remain with the work going on," and that, if she did not so wish, the second party was to provide a resident caretaker or pay the additional premium of insurance rendered necessary by the house being unoccupied. *Held,* that the contract was not a mere option, but was one of purchase and sale binding both parties.

In a suit in equity by the purchaser against the owner for specific performance of the contract above described, it appeared that there was no agreement for extension of the time within which the contract was to be performed and that the plaintiff did not tender performance on the day named. There was evidence that, after the making of the contract, the purchaser had entered upon the premises and at considerable expense had made repairs during June, July, August and September; that the repairs were necessary in order that the purchaser might obtain the money for the final payment by a loan to be secured by a mortgage upon the premises; that the purchaser made an application for the loan, which was refused by one bank, and that an application to a second bank had to be made; that the defendant was absent from the Commonwealth during August and a portion of September; that, in response to a telephone message

that the deed of the defendant was ready at a certain bank, the plaintiff went to that bank and was told that a temporary delay would be satisfactory; that the plaintiff reasonably did not expect that he would be held to a strict performance of the contract; that on September 30 the plaintiff tendered performance, which the defendant refused, and that the refusal was not because of the failure of the plaintiff to perform on September 1, but because the defendant was informed that the plaintiff "built shabby houses." The trial judge found in substance that time was not regarded by the parties as of the essence of the contract and that the plaintiff's tender was made within a reasonable time, and a decree directing specific performance was entered. On appeal by the defendant, it was *held* that the findings were warranted and that it would have been inequitable to have refused relief to the plaintiff.

BILL IN EQUITY, filed in the Superior Court on October 9, 1919, for specific performance of a contract in writing alleged to be for the purchase by the plaintiff and the sale and conveyance by the defendants of certain real estate on Pleasant Street and Brook Road in Milton.

The contract was dated May 30, 1919, and was signed by J. Murray Forbes and Earle Morgan. The first paragraph recited that "Forbes hereby agrees to sell to said Morgan the house and land," describing it. The remaining paragraphs were as follows:

"Second. The price to be paid by said Morgan is Twelve thousand dollars ($12,000) on delivery of deed on or before September 1, 1919, without interest.

"Third. The said Morgan herewith has paid Five hundred dollars ($500) as bargain money, to be forfeited in case he fails to pay the balance of $11,500 on or before September 1, 1919. It is agreed that said Morgan may enter upon the premises after ten days from the date hereof, to make repairs or additions to said house on the understanding that such repairs or additions shall belong to the estate free of charge, in case said Morgan shall fail to complete his payment of $11,500 on or before September 1, 1919. The said Morgan shall be responsible for all bills and charges incurred in making such repairs or additions, free from any mechanic's lien.

"Fourth. The said Morgan agrees to take over the present insurance on said house on receipt of deed, paying *pro rata* for the unexpired portion of the policies and also the cost of Mechanics' Privilege for work contemplated. The said policies are for $4,500 and expire on August 16, 1920. Should said house be destroyed or damaged by fire, before the final payment of $11,500 has been

made, the insurance recoverable shall belong to said Morgan the same as if the purchase had been completed and deed given to him, and the fact of such destruction or damage shall not invalidate or affect the final payment of $11,500 for the land.

"Fifth. The said Morgan further agrees to pay one half the local tax assessed for 1919 on house and land. It being agreed that the valuation of the land shall be taken as one half the assessed value of the total land on both sides of Brook Road, belonging to the Estate. In 1918 the house was assessed at $2,000 and the land on both sides of Brook Road at $15,000.

"Sixth. It is agreed that the present occupant of the house may remain until Sept. 1, 1919, or until the final payment of $11,500 has been made, in case she wishes to remain with the work going on. If the present occupant does not wish to remain, the said Morgan shall provide a resident caretaker or else pay the additional premium of insurance for allowing the house to be unoccupied. The present occupant to have the vegetables and use of garden for this season."

The suit was heard by *Hammond*, J., a commissioner having been appointed under Equity Rule 35 to take the testimony. The judge ruled in substance that the contract "was not merely an option agreement binding the defendants alone, but was a bilateral contract by which the defendants agreed to sell and the plaintiff undertook to purchase the property," found "that the provision of the contract that the deed should be delivered and the money should be paid 'on or before September 1, 1919,' was not so important in the eyes of the parties as to make performance on or before that date an essential part of the contract," that it did not appear "either from the contract itself or from the attending circumstances, that time was regarded by the parties as of the essence of the contract," and that a tender by the plaintiff on September 30, 1919, "was an offer to perform within a reasonable time;" and ordered a decree for the plaintiff. A final decree directing specific performance having been entered, the defendants appealed.

*F. Rackemann*, (*H. M. Davis* with him,) for the defendants.

*W. V. Taylor*, (*H. W. Loker* with him,) for the plaintiff.

CARROLL, J. An agreement in writing relating to the conveyance of real estate in Milton was entered into on May 30, 1919.

The price was $12,000, to be paid by the plaintiff on or before September 1, 1919, when the deed was to be delivered. Tender of payment was not made until September 30, 1919. On October 9, 1919, this suit in equity was brought for the specific performance of the contract. There was a decree for the plaintiff.

The defendants contend that the agreement is an option and time is of its essence. The plaintiff contends it is an agreement for the sale and purchase of real estate and that time is not of the essence of the contract. It is the established rule, both in law and equity, that time is of the essence of an option and if the agreement of the parties was an option, in order to hold the defendants, payment on or before September 1, 1919, was a condition precedent and relief cannot be given the plaintiff. *Smith & Rice Co.* v. *Canady*, 213 Mass. 122. *Boston & Worcester Street Railway* v. *Rose*, 194 Mass. 142. *Carter* v. *Phillips*, 144 Mass. 100. *Trogden* v. *Williams*, 144 N. C. 192.

An option to purchase real estate is a unilateral contract by which the owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the contract. By such an agreement the owner does not sell the land, nor does he at the time contract to sell. He does, however, agree that the person to whom the option is given shall have the right at his election or option to demand the conveyance in the manner specified. It is merely the right to an election which has been sold and the owner of this right is not bound to complete the sale. *Barnes* v. *Rea*, 219 Penn. St. 287. *Pollock* v. *Brookover*, 60 W. Va. 75. *Smith* v. *Bangham*, 156 Cal. 359.

The contract of May 30, 1919, was signed by the plaintiff and the defendant Forbes acting for himself and his sister. Although it was not stated in express terms that Morgan agreed to buy the premises, the contract was not a mere option binding only upon the defendants, by which they gave the plaintiff merely the right to purchase at his election. It was a bilateral agreement by which Forbes agreed to convey the land, and considering the entire contract, Morgan in fact agreed to purchase it, and both parties were bound by the stipulations of the written contract. It recited that the price was $12,000 and was to be paid by Morgan on or before September 1, 1919; that he has herewith paid

$500 as "bargain money" to be forfeited if he fails to "pay the balance of $11,500 on or before September 1, 1919." "A bargain is a contract or agreement between two parties, the one to sell goods or lands, and the other to buy them." *Hunt* v. *Adams,* 5 Mass. 358, 360. The words "bargain money" have much the same significance as "earnest," which under the statute of frauds is regarded as part payment of the price. *Howe* v. *Hayward,* 108 Mass. 54. We do not decide, however, that the signing by both parties and the use of the words "bargain money" would of themselves be sufficient to require the plaintiff to complete the purchase. See *Benedict* v. *Pincus,* 191 N. Y. 377; *Moran* v. *Standard Oil Co.* 211 N. Y. 187, 197.

In the second paragraph it was agreed that the price to be paid by Morgan was $12,000. If this was an absolute promise to pay, see *Benedict* v. *Pincus, supra,* and not merely a promise to pay at his election, or if the whole contract shows it was intended by the parties that his promise to pay the stipulated sum was unconditional, then he was bound to make the purchase and the contract was one of purchase and sale. It was agreed that on the delivery of the deed the plaintiff was "to take over the present insurance on said house, . . . paying *pro rata* for the unexpired portion of the policies and also the cost of Mechanics' Privilege for work contemplated," and in the fifth paragraph he promised "to pay one half the local tax assessed for 1919 on house and land." Even if the contract should be construed to mean that the payment of taxes and insurance depended on his completing the purchase it was further provided that he should supply a caretaker or pay the additional insurance premium if the house became unoccupied. This latter provision was subject to no such condition. He was under the positive obligation to the defendants to pay the insurance or provide a caretaker and they had a right to insist on its performance. He was also given the right after ten days to enter upon the premises and make repairs and alterations and if he failed to complete the bargain, the repairs and alterations were to belong to the estate, free from all charges and mechanics' liens.

In addition to this, in the event of damage or destruction of the house by fire before final payment was made, the insurance recovered was to belong to Morgan, "the same as if the purchase

had been completed." This right to the insurance in case of loss was expressly given him by the contract. It was not intended by this provision of the contract to give the plaintiff, as the holder of a mere option who could decline to purchase the property, the right to recover for the loss or damage to the building a sum which might exceed the price of the option. On the other hand this provision was consistent with a bargain whereby the plaintiff was to buy and the defendants to convey the land. It indicated that the parties contemplated not merely that the defendants were bound, but that both plaintiff and defendants were bound. The plaintiff under the express terms of the contract had the right to enter and take possession of the premises and make repairs, with the full ownership of the insurance received if a loss occurred, and was obliged to provide a caretaker or pay the added premium if the house was unoccupied. Taking into account these positive provisions, and the words used, with all the terms of the contract in mind, as well as its apparent purpose, it was a bilateral contract, the plaintiff and the defendants being under obligation to each other and having their correlative rights. The plaintiff in our opinion gave an absolute promise to pay the agreed price. He was required to make the purchase. The contract therefore was not a mere option, but one of purchase and sale binding on all the parties. *Benedict* v. *Pincus, supra. Moran* v. *Standard Oil Co., supra. Ellis* v. *Bryant,* 120 Ga. 890. *Langert* v. *Ross,* 1 Wash. 250. *Anderson* v. *Wallace Lumber & Manuf. Co.* 30 Wash. 147. *Ives* v. *Hazard,* 4 R. I. 14. *Davis* v. *Martin,* 146 N. C. 281.

The stipulation that the $500 paid when the contract was executed, should be forfeited if Morgan failed to pay the balance on or before September 1, did not affect his right to specific performance. *O'Brien* v. *Boland,* 166 Mass. 481.

It remains to consider whether time was of the essence of the contract. The judge found that there was no extension of time agreed to. The plaintiff did not make the final payment on or before September 1, but a court of equity will relieve against delay in the performance of a contract and enforce specific performance, notwithstanding the failure to perform according to the date assigned, if justice can be done between the parties, and if there is nothing in their express stipulations, the nature of the property, or the surrounding circumstances, which would make

this course inequitable. *Mansfield* v. *Wiles,* 221 Mass. 75. *King* v. *Connors,* 222 Mass. 261. There was evidence that Morgan had entered upon the premises and at considerable expense had made repairs. This circumstance "is ordinarily decisive to entitle him to the favorable interposition of a court of equity, when it does not appear that there has been any other change in the value of the land, when time was not originally of the essence of the contract and has not been made so by notice, and he has been guilty of no laches in applying for relief." *Barnard* v. *Lee,* 97 Mass. 92, 95. The defendant Forbes was absent from the Commonwealth during August and a portion of September in the year 1919. There was evidence that to secure the money for the final payments a mortgage was to be given, and to secure this, repairs were necessary; that during June, July, August and September repairs were made, the application for a loan was made and refused by one bank, and application was made to another bank. The plaintiff also testified that he went to the trust company where the deed was deposited by the defendant Forbes, in response to a telephone message that it was ready, and was told that a temporary delay would be satisfactory. There was other evidence tending to show that the plaintiff did not reasonably expect he would be held to a strict performance of the contract, and that the real objection to making the conveyance was not because of the plaintiff's failure to comply with the time stipulation, but because the defendant Forbes was informed that "he built shabby houses." Taking all the circumstances into account, we think the plaintiff made out his case and that it would be inequitable to refuse him relief.

*Decree affirmed.*