ALFRED L. HUNT *vs.* EVA M. BASSETT.

Barnstable.     October 10, 1929. — November 27, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract*, Performance and breach, Construction, Option. *Equity Jurisdiction*, Specific performance, Contempt. *Time. Tender. Waiver.*

A lease of land was for one year at a rental of $100 for the first five months, $75 for the sixth month and $65 a month for the last six months; and gave the lessee the option of purchasing the property during the term for $10,000 or of renewal of the lease. About a week before the lease expired, the lessee, upon the lessor's inquiry, stated that he would assume a mortgage on the property, whereupon the lessor said, "Then that will mean that I will have $10,000 cash." The lessee made no reply. On the day the lease expired, the lessor's attorney in the lessor's presence stated to the lessee that he thought the lessor would require $3,000, or perhaps $2,500, as a deposit. The plaintiff then offered a note for $1,700 secured by a mortgage on other land, which was refused. The lessor then stated, in answer to the lessee's inquiry whether he was ready to give a deed, that that would mean $10,000 besides the mortgage on the leased premises and that he would not sell for $10,000, although the lessee stated that he understood the price was to be $10,000 in all. The next day the lessee offered the lessor a certified check for $1,000 as a binder; and, when that was refused, offered a check for $100 as rent, which also was refused. Two days later the lessor had served upon the lessee a notice to quit. In a suit in equity thereafter commenced by the lessee for specific performance of the agreement to sell, a master found that the defendant had not waived any of the terms of the agreement. A final decree was entered dismissing the bill. *Held,* that

(1). Time was of the essence of the options given in the lease;

(2) The finding concerning waiver by the defendant, not being clearly wrong, was conclusive on that issue;

(3) The plaintiff was bound to prove that he had tendered the purchase price, or that he had offered to perform the agreement and that he was ready, able and willing to do so;

(4) On the facts, the plaintiff had not made a proper tender or offer to perform;

(5) The tender of the $100 check for rent was not a legal tender;

(6) The decree was proper.

It appeared in the suit in equity above described that an interlocutory decree had been entered, previous to the final decree, directing the plaintiff to vacate the premises within thirty-one days after the entry of the final decree. The plaintiff appealed from both decrees. About two and one half months subsequent to the entry of the final decree, and while the suit still was pending in this court, the defendant filed a petition to have the plaintiff adjudged in contempt for failure to comply with the interlocutory decree. The petition was ordered dismissed. Upon appeal by the defendant, this court, without considering whether the appeal properly was before it, *held*, that no error was shown by the order.

BILL IN EQUITY, filed in the Superior Court on May 11, 1926, for specific performance by the defendant of an agreement to sell to the plaintiff premises previously occupied by him under a lease.

The suit was referred to a master, who found that the rental paid by the plaintiff under the lease was $100 a month for the first five months, $75 for the next month and $65 a month for the last six months. Other material facts found by the master are stated in the opinion. By orders of *D. T. O'Connell*, J., there were entered on April 30, 1929, an interlocutory decree confirming the master's report, an interlocutory decree dissolving a stipulation previously filed by the parties as to the plaintiff's occupancy of the premises during the suit and ordering the plaintiff to vacate those premises within thirty-one days after the entry of a final decree; and a final decree dismissing the bill. The plaintiff appealed from all the decrees.

On July 20, 1929, the defendant filed a petition that the plaintiff be adjudged in contempt for failure to comply with the decree directing him to vacate the premises. The petition was heard by *Weed*, J., and was dismissed. The defendant appealed.

*A. W. Blakemore,* for the plaintiff.

*J. W. Allen,* (*E. H. Abbot* with him,) for the defendant.

SANDERSON, J. The case comes to this court by appeal from a decree dismissing a bill for specific performance of an alleged agreement to convey real estate. There is also an appeal by the defendant from an order dismissing her petition that the plaintiff be adjudged in contempt of court for failing to comply with an interlocutory decree.

Under date of April 23, 1925, the defendant leased to the plaintiff the garage in question for the term of one year from May 1, 1925. The lease contained the following provision: ". . . giving the said Alfred L. Hunt the privilege of purchasing said garage during the term of this lease for the sum of ($10,000) Ten Thousand Dollars and with the privilege of renewal of this lease at its expiration by the said Alfred L. Hunt." The case was referred to a master, whose report was confirmed; an interlocutory decree, discharging a stipulation which had been filed and ordering the plaintiff to vacate the premises within thirty-one days, was entered, and on the same day a final decree dismissing the bill with costs was filed.

The master found that about one week before the lease expired the defendant asked the plaintiff whether he would assume the mortgage on the property for $2,800 and he said that he would. She then said, "Then that will mean that I will have $10,000 cash," and he made no reply. About three days before the expiration of the lease the plaintiff asked the defendant if she had the papers ready and was referred by her to her attorney. On April 30, 1926, the plaintiff asked her in the presence of her attorney what deposit she would require, and the attorney said he thought $3,000 or perhaps she would take $2,500. The plaintiff then offered the attorney a note for $1,700 secured by mortgage on land in Florida. This was refused. The plaintiff at this time had a certified check for $1,000, but that fact was not made known. The plaintiff then asked the defendant if she was ready to give a deed and she said that would mean $10,000 besides the mortgage; the plaintiff replied that he understood he was to pay $10,000 in all, and the defendant said she would

not sell for $10,000 and would do no more business that day. The plaintiff made no further tender but consulted a lawyer and was advised that a tender of ten per cent of the agreed price was sufficient. On the afternoon and evening of April 30 the plaintiff made an unsuccessful effort to see the defendant. On May 1 he met her and said he wanted to offer her the certified check for $1,000 as a binder. She said the option had expired. He then offered her a check for $100 for rent and she said if he stayed there the rent would be more. She took both checks in her hand and returned them saying it was not a legal tender as that was supposed to be cash. On May 3, 1926, the defendant caused to be served on the plaintiff a notice to quit and deliver up the garage and premises in fourteen days for nonpayment of rent. The plaintiff understood that the lease would expire on April 30 and did not understand that the terms of the lease had been changed or modified in any way by the defendant.

The plaintiff did not have in cash on April 30, or on May 1, either the sum of $10,000 or the sum of $7,200 — the amount of the purchase price named in the option less the amount of the mortgage of $2,800. He did not tender at any time either sum; and he never tendered the sum of $3,000 or $2,500 to the defendant or to her attorney. The master found that the plaintiff was not prepared to pay either of those sums and that the only thing he did during the life of the lease was to offer the Florida mortgage note on April 30, to which reference has been made. The master found, if material, that the plaintiff on May 1 tendered the defendant a certified check for $1,000 which she refused to accept, stating that the lease had expired. He found that there was no waiver of any of the terms of the lease and the option and that it was necessary under those terms that the plaintiff pay or tender to the defendant the full amount of the purchase price of $10,000 set forth in the option to purchase; and that having failed to do that he was not entitled to the relief sought.

The plaintiff testified that when the defendant first spoke to him about three weeks before April 30, he was undecided which option to exercise, whether to buy or lease, and at the end of the lease he intended only to make some tender or

some small payment as a "binder" and then expected that a definite agreement to sell would be given him by the defendant.

"It is the established rule, both in law and equity, that time is of the essence of an option." *Morgan* v. *Forbes,* 236 Mass. 480, 483. *Carter* v. *Phillips,* 144 Mass. 100, 102, 104. *Boston & Worcester Street Railway* v. *Rose,* 194 Mass. 142, 149. *Smith & Rice Co.* v. *Canady,* 213 Mass. 122, 124. *Donovan Motor Car Co.* v. *Niles,* 246 Mass. 106, 107. Strict compliance with its conditions must be shown. The finding that the defendant did not waive her right to require performance by the plaintiff is decisive of that issue. It does not appear to be clearly wrong. *Smith & Rice Co.* v. *Canady, supra,* at page 125. *Harvey* v. *Bross,* 216 Mass. 57, 61. *Donovan Motor Car Co.* v. *Niles, supra.*

The option gave the plaintiff the right to purchase the property during the term and the word "purchase" ordinarily means the act of acquiring property by the payment of the price. *Osgood* v. *Tax Commissioner,* 235 Mass. 88, 91. *Brokaw-Eden Manuf. Co.* v. *Lockerbie,* 237 Mass. 463, 466. If the plaintiff had so exercised his rights under the option as to be entitled to a conveyance of the property, the payment of money by him and the delivery of a deed by the defendant would occur at the same time. The conditions are concurrent and mutually dependent. In such a case it is not necessary for the plaintiff to make an actual tender of the purchase money until he receives the deed and it is not necessary for the defendant to deliver the deed until he receives the purchase price. But if the plaintiff did not tender the purchase price he was bound to prove at least that he had offered and demanded performance within the term of the lease and also, apart from waiver, that he was within the term ready, willing and able to carry out his part of the transaction. *Irvin* v. *Gregory,* 13 Gray, 215, 218. *Brown* v. *Davis,* 138 Mass. 458, 460. *Cole* v. *Killam,* 187 Mass. 213, 216. *Smith & Rice Co.* v. *Canady, supra,* at page 124. *Morgan* v. *Forbes, supra.* *Roche* v. *Fairbanks,* 254 Mass. 7, 9. *Strumskis* v. *Tilenas,* 268 Mass. 550, 553. The parties understood that unless

one of the options was properly exercised the lease would expire on April 30, 1926. In a stipulation filed in the case they referred to it as "expiring April 30, 1926." The master treated the life of the lease as ending on that date. The question whether the lease expired April 30 or May 1 (see *Atkins* v. *Sleeper*, 7 Allen, 487; *Bemis* v. *Leonard*, 118 Mass. 502, 506) is immaterial so far as the plaintiff's right to specific performance is concerned, because he had not fulfilled the conditions of the option on either date. The tender of a check for $100 on May 1 to renew the lease was not a legal tender. That was one of the reasons stated at the time for refusing it.

Without deciding whether the order on the petition for contempt could properly be brought to this court by appeal, it is enough to say that no error of law is disclosed on the record in connection with the order made on that petition. *Home Investment Co.* v. *Iovieno*, 246 Mass. 346, 348.

*Decrees affirmed with costs.*