JOSEPH ARONSON *vs.* SOL. AND S. MARCUS COMPANY.

SAMUEL MARCUS & another *vs.* JOSEPH M. ARONSON &
another.

JOSEPH ARONSON *vs.* SOL. AND S. MARCUS COMPANY.

Worcester.   September 23, 1935. — November 12, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

</div>

*Contract*, Construction, Performance and breach, For purchase of cor-
   porate stock, Option.   *Evidence*, Presumptions and burden of proof.
   *Damages*, For breach of contract.   *Interest*.   *Equity Jurisdiction*,
   Specific performance.

In an action brought by an employee of a corporation against it to re-
   cover a commission on the corporation's net profits, as provided by
   a contract between it, certain of its stockholders and the plaintiff, it
   was no defence that by such contract the plaintiff was bound to
   apply the commission toward purchase of those stockholders' shares.

In an action by an employee and director of a corporation to recover a commission on the corporation's net profits, the plaintiff was not bound by statements of profits in the corporation's tax returns, though he signed some of them, nor by its book entries, but could prove the real profits by any proper evidence.

Where there were heard together an action at law against a corporation by its employee to recover a commission on its net profits, and a suit in equity for specific performance of a contract by the employee to apply such commission toward purchase of shares in the corporation owned by the plaintiff in that suit, and it appeared that profits had been earned but not distributed in dividends, interest awarded to the employee in the action at law should not be ordered to be paid to him but should be ordered to be applied toward purchase of additional shares from the plaintiff in the suit in equity.

A corporation was not liable on its contract with an employee and stockholder to buy his shares within sixty days after termination of his employment, where within that time he made no tender of his shares nor demand for performance by the corporation.

CONTRACT. Writ dated February 20, 1933.

BILL IN EQUITY, filed in the Superior Court on March 7, 1934.

CONTRACT. Writ dated April 24, 1933.

In the suit in equity, a demurrer by the defendant Aronson to the bill was overruled, and his demurrer to a counterclaim by the defendant Sol. and S. Marcus Company was sustained, by *Williams*, J., and both defendants appealed.

The first action at law and the suit in equity were heard together by *Williams*, J. The judge found for the plaintiff in the action in the sum of $4,722.21, and both parties alleged exceptions. In the suit, both plaintiffs and both defendants appealed from the final decree described in the opinion.

The second action was tried in the Superior Court before *Collins*, J. There was a verdict for the plaintiff in the sum of $10,925. The defendant alleged exceptions.

*S. A Seder*, (*H. Seder* with him,) for Aronson.

*F. P. McKeon*, for Sol. and S. Marcus Company.

*A. M. Hillman*, for Marcus and another, submitted a brief.

LUMMUS, J. Sol Marcus and Samuel Marcus, on November 3, 1927, entered into an agreement with their nephew Joseph M. Aronson, sometimes called Joseph Aronson, which

contemplated the merger of the retail shops of the two first named persons, and the change of the name and corporate structure of an existing corporation to enable it to conduct the combined business. The new name of the corporation was to be Sol. and S. Marcus Company. The capital stock was to consist of $100,000 in common stock, and $50,000 in preferred stock without voting power. Of the common stock, $90,000 was divided equally between Sol Marcus and Samuel Marcus. The remaining $10,000 was awarded to Joseph Aronson, who paid for it in cash at par. Aronson was given "the right out of the profits for him provided under the terms of this contract to purchase additional common stock of the corporation at the price of one hundred dollars ($100.) each per share for stock so purchased until the common stock held by the aforesaid Aronson shall represent twenty-five (25%) per cent of the common stock issued and outstanding. In the making of such purchases, however, Aronson shall purchase an equal number of shares from both Samuel and Sol Marcus who shall be under obligation to sell such shares to the aforesaid Aronson."

By the agreement, Sol Marcus was to be president, Samuel Marcus treasurer, Joseph Aronson vice-president, and all three of them directors. All three were to help conduct the business, but Samuel Marcus was not required to give his whole time to it. The "sole management and control of the business" were to "vest exclusively" in Sol Marcus and Samuel Marcus. Their control was further assured by a provision that the common stockholders could act only by a two-thirds vote of the stock, and that the directors could act only by a vote of two thirds of them owning two thirds of the common stock. Thus nothing could be done without the concurrence of Sol Marcus and Samuel Marcus. These provisions of the agreement were followed in amendments of the by-laws adopted on November 10, 1927.·

Aronson was to receive for his services $75 a week for the first two years, and $100 a week afterwards. Until he should own fifteen per cent of the common stock, he was to receive an additional commission of fifteen per cent of the net annual profits above the amount required for the cumulative

dividends of six per cent a year on the preferred stock, but "the aforesaid Aronson shall use this commission in the purchase of additional stock of the corporation in the manner herein provided."

The agreement provided that Aronson "shall be retained in a responsible position in the business that the corporation conducts for a period of five (5) years." Paragraph 23 of the agreement was as follows: "In the event that the services of Joseph Aronson are terminated after 5 yrs. by the vote of the corporation then and in that event the shares of stock held by the aforesaid Joseph Aronson in the corporation shall within a period of sixty (60) days from date of such termination be purchased by the aforesaid corporation in cash at the actual cost of the aforesaid shares to the said Joseph Aronson together with any and all cumulative dividends or profits as based upon the last financial statement of the corporation." The corporation not only was a party to the agreement but also accepted its terms in giving employment to Aronson for five years "as assistant to the managers."

It is of little importance whether Aronson's employment ended five years from November 3, 1927, the date of the agreement, or five years from November 10, 1927, the date of the vote of the directors giving him employment in accordance with the agreement. At any rate the employment ended in November, 1932. Without incident Aronson continued to hold his position until after the first of the year 1933. He had drawn no commission on net profits, and had bought no more common stock. The corporation had earned net profits found to be approximately $10,400 for 1928 and $13,990 for 1929, but had lost money thereafter. There was evidence that Aronson wished to obtain a new and better contract, or else to draw his commission, sell his stock, and move to Montreal. There was also evidence that Sol and Samuel Marcus wished to get rid of Aronson without buying his stock. At a special meeting of the directors on February 10, 1933, it was voted that "the first floor departments of the corporation be submitted to Joseph Aronson for management and merchandising, who shall co-

operate with the co-directors in the discharge of his duties,"
that "the buyers in all departments including the first floor
receive buying orders of the Board of Directors or a majority
thereof and that no purchases be made by the buyers until
such buying orders are received by them," and that "Joseph
Aronson is retained by the corporation at a salary of $60.00
per week." The corporation carefully avoided any vote
terminating Aronson's employment entirely. Aronson left
after that, and went into business in Montreal.

On February 20, 1933, Aronson brought an action of con-
tract against the corporation, numbered 432, to recover his
commission of fifteen per cent upon the net profits of the
years 1928 and 1929. On April 30, 1934, the trial judge
found that the corporation owed Aronson a commission of
$3,740.41 exclusive of interest, and all parties agree that
this finding was warranted by the evidence. The provision
of the contract that Aronson should use the commission in
the purchase of stock from Sol and Samuel Marcus furnishes
no defence to the action at law. It merely affords ground
for specific performance against Aronson. There is nothing
in the point that Aronson's rights depend upon the vote of
the directors on November 10, 1927, and not on the agree-
ment of November 3, 1927. The corporation was a party
to both, and the vote of the directors did not vary the
terms of the agreement by which the corporation was already
bound. Even if the agreement of November 3, 1927, con-
templated the execution of a later contract of employment,.
the agreement was nevertheless complete, final and binding.
*Duggan* v. *Matthew Cummings Co.* 277 Mass. 445, 450.
*Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products,
Inc.* 283 Mass. 383, 388. *Rosenfield* v. *United States Trust
Co.* 290 Mass. 210, 216, 217. The finding of liability in this
case was reached without error of law apparent on the
record.

But the exceptions of Aronson relating to the amount of
damages must be sustained. Although all parties agree
that there was evidence warranting the finding as to damages,
there was also evidence that the books of the corporation
and its returns for taxation did not show all the net profits

for 1928 and 1929. The fact that Aronson signed some of the returns does not conclude him. The judge denied several requests for rulings made by Aronson to the effect that, notwithstanding the books and returns, the question of fact whether there were additional net profits was open. We think that this was error, (*Bresnick* v. *Heath, ante,* 293, 298–299,) and that the case must be sent back for a new trial on the question of damages. See *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86; *Daly* v. *Chapman Manuf. Co.* 246 Mass. 118, 125.

Samuel Marcus and the administratrix of the estate of Sol Marcus, who died March 1, 1934, brought a suit in equity against Aronson, numbered 433, to compel Aronson to apply the commission on profits which he might recover from the corporation in number 432, to the purchase from the plaintiffs of shares in the corporation, as provided in the agreement of November 3, 1927. A final decree was entered, requiring the corporation to pay to the plaintiffs $3,600, out of the principal sum of $3,740.41 which it had been found to owe Aronson for a commission, on delivery by the plaintiffs to Aronson of thirty-six shares of stock in the corporation. The balance amounting to $140.41, the costs, and the interest amounting to $981.80, recovered by Aronson in number 432, were to be paid by the corporation to Aronson. When all this should be done, Aronson was ordered to deliver to the corporation a satisfied execution in the action at law numbered 432. All parties appealed. No error appears in the principles adopted in this case except in allowing Aronson to collect the interest awarded him in number 432. He was to receive the commission and invest it at once in stock. The stock paid no dividends. If both parties had performed their legal and equitable obligations, Aronson would simply have had stock which produced no income. See *Ratner* v. *Hill,* 270 Mass. 249, 253, 254. An erroneous award of interest in number 432 is unimportant, for justice can be done with respect to it in number 433. But although in other respects the principles adopted in this case were correct, a new final decree cannot be entered until the amount of recovery in number

432 is determined.  All that Aronson should be allowed to collect in money is any balance which cannot be turned into stock in the manner provided by the contract, and the costs in number 432.

Aronson brought a second action against the corporation on April 24, 1933, numbered 444, to recover $10,000 for one hundred shares of stock, under the provision of the agreement of November 3, 1927, by which the corporation agreed to buy Aronson's stock at cost "in the event that the services of Joseph Aronson are terminated after 5 yrs. by the vote of the corporation."  The jury awarded him $10,000 with interest amounting to $925.  The case comes here on exceptions taken by the corporation.  For reasons already stated, there is nothing in the defendant's point that the rights of the parties depend upon the vote of the directors of November 10, 1927, and not upon the agreement of November 3, 1927.  We need not consider the propriety of allowing the full price of the stock as damages. Neither need we consider whether the "services" mentioned in the agreement were confined to those rendered within the term of employment under it, as contended by the defendant.  See *Hopedale Machine Co.* v. *Entwistle*, 133 Mass. 443.  We need not consider, moreover, whether the vote of the directors of February 10, 1933, demoting Aronson to a comparatively insignificant position and reducing his salary, constituted, as he contends, a "termination" of his services "by the vote of the corporation."  If it did, the corporation became obligated to buy his stock "within a period of sixty (60) days from date of such termination."  This provision in substance gave Aronson an option to sell.  The corporation could not perform its obligation unless Aronson was willing to sell.  He was not entitled to wait indefinitely, and then keep his stock or sell it according to its fluctuations in value above or below par.  If he wished the corporation to buy the stock, he should have demanded performance of its obligation within the sixty days specified in the contract.  *Duchemin* v. *Kendall*, 149 Mass. 171, 175.  No such demand was made.  The corporation was never put in default, and its obligation was at an end before Aronson

brought his action. *Brown* v. *Davis*, 138 Mass. 458. *Carter* v. *Phillips*, 144 Mass. 100. *Soderlund* v. *Helman*, 215 Mass. 542, 544. *Morgan* v. *Forbes*, 236 Mass. 480, 483. *Hunt* v. *Bassett*, 269 Mass. 298, 302. *Grueby* v. *Chase Harris Forbes Corp.*, *ante*, 156, 159. Williston, Contracts, §§ 832–835, 853. A verdict ought to have been directed for the defendant.

In number 432, the entry will be

*Exceptions sustained.*
*New trial ordered, limited to the question of damages.*

In number 433, the interlocutory decree overruling the demurrer to the bill is affirmed, the interlocutory decree sustaining the demurrer to the counterclaim is affirmed, and the appeal claimed from the "findings, rulings and order" is dismissed. *Graustein* v. *Dolan*, 282 Mass. 579, 583. *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 110. *Barnes* v. *Barnes*, 291 Mass. 383, 387. The final decree is reversed. A new final decree in conformity to the principles of this opinion is to be entered after the amount of recovery in number 432 is determined.

*Ordered accordingly.*

In number 444, the exceptions of the defendant corporation are sustained, and judgment is to be entered for the defendant under G. L. (Ter. Ed.) c. 231, § 124.

*So ordered.*