GEORGE E. LAPHAM *vs.* EASTERN MASSACHUSETTS STREET RAILWAY COMPANY & another.

Essex. December 8, 1961. — January 24, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & SPIEGEL, JJ.

*Practice, Civil,* Verdict. *Jury and Jurors.*

A trial judge, upon learning that the foreman of a jury which had just returned a verdict in an action and had been excused for the day and had left the court room had signed and handed to the clerk a verdict slip for each party, had power to recall the jury and to ask them, upon their reassembling promptly in the jury box, to retire and, if their verdict was intended for the plaintiff, to destroy the verdict slip for the

defendant or, if their verdict was intended for the defendant, to destroy the verdict slip for the plaintiff; and, upon the jury's retiring and then returning and presenting a verdict slip indicating only a verdict for the plaintiff, such verdict was properly recorded.

TORT. Writ in the District Court of Southern Essex dated June 9, 1958.

Upon removal to the Superior Court the action was tried before *Good,* J.

*John Z. Doherty,* for the defendants.

*Israel Bloch,* for the plaintiff.

SPIEGEL, J. This is an action of tort in four counts to recover for personal injuries and property damage sustained by the plaintiff when a steel girder was "pushed" into his automobile by a bus owned by the defendant Eastern Massachusetts Street Railway Company, and operated by the defendant John E. Sieber, its employee.

The case is here on the defendants' exceptions to the "recording of the verdicts of the jury as verdicts for the plaintiff on each count of the plaintiff's declaration; to the action of the court in recalling the jury after its verdicts had been ordered recorded, and to the court's direction to the jury with reference to the verdict slips on which the jury had already returned verdicts for both the plaintiffs [*sic*] and the defendants on each count of the plaintiff's declaration." The defendants also excepted to the denial of a motion for a new trial on the ground that " [t]he original verdicts returned by the jury were inconsistent they having found for the plaintiff and for the defendant [*sic*] on each count of the plaintiff's declaration."

The defendants concede "that there was evidence which would have warranted the jury in finding negligence on the part of the defendant Sieber while operating the bus on the business of his employer, the Eastern Massachusetts Street Railway Company, which negligence could have been found to be the proximate cause of the accident, and that there was also evidence which would have warranted the jury in finding that the plaintiff was in the exercise of due care."

The bill of exceptions reveals the following facts. The trial lasted for a period of seven days. The jury were new, this case being the first tried in the session. After the judge's charge and before the jury retired to deliberate, the clerk handed the foreman four sets of printed verdict slips. Each set consisted of a sheet vertically perforated in the center. The left side of each was furnished for use in reporting a verdict for the plaintiff. It contained the title and number of the case and provided blanks for the entry of the amount of damages, if any, and for the foreman's signature. The right side was for use in reporting a verdict for the defendant. It bore the title and number of the case and provided only one blank line for the foreman's signature.

The jury were not instructed in the use of the verdict slips.

The case was submitted to the jury at 1 P.M. on October 13, 1960. The jury returned at 3:15 P.M. that same day and announced that they had agreed upon a verdict. The foreman handed the clerk the four verdict slips with the sides showing verdicts for the plaintiff appearing at the top, and the sides provided for reporting verdicts for the defendants folded underneath. The clerk handed the slips to the judge, who, without examining both sides of the sheets, "noted in his trial book" the verdicts for the plaintiff. The clerk then read the verdicts for the plaintiff in the several amounts and concluded with the following: "So you say, Mr. Foreman and so members of the jury so you all say."

No audible reply was made by the foreman or by any member of the jury. The judge noticed that the foreman and other members of the jury nodded their heads in assent. The jury were then excused for the day and left the court room. The judge left the bench and entered his chambers.

Thereupon, the clerk unfolded the verdict slips for the purpose of dating and indorsing them. He then noticed for the first time that the foreman had signed the defendants' verdict slips as well as the plaintiff's. The clerk im-

mediately notified the judge who dispatched a court officer to call the jury back to the court room. All the members were located in the court house and were reassembled in the jury box within five minutes from the time they had first reported their verdicts. None of the counsel for the parties was present in the court room.

The judge then addressed the jury as follows: "Mr. Foreman, in examining the verdict slips that we gave you it has come to my attention that you signed both sheets. In other words, you have signed both the verdicts for the plaintiff and for the defendants. So I am going to ask you to retire. Is there a room to which they can retire? I am going to ask you to retire and if your verdicts are for the plaintiff you will destroy the verdict slips for the defendants, and if the verdicts were intended to be for the defendants you will destroy the verdict slips for the plaintiff. Will you do that, please."

The jury then retired and at 3:30 p.m. returned to the court room. The foreman announced that the jury had agreed upon a verdict and handed the clerk only the portions of the verdict slips indicating verdicts for the plaintiff. The judge instructed the clerk to record the verdicts and the clerk read the verdicts for the plaintiff as before. The jury were then excused.

It has been established that a discrepancy between the verdict actually agreed upon by the jury and that reported by them may, upon proper proof, be corrected after the separation of the jury. *Capen* v. *Stoughton,* 16 Gray, 364. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 386–388. See Wigmore, Evidence (McNaughton rev.) § 2355.

The court in *Randall* v. *Peerless Motor Car Co., supra,* 387, stated that affidavits ". . . were admissible for the purpose of showing the clerical error occurring after the deliberations of the jury had ceased and the verdict had been agreed upon, and of enabling the court to correct it." In *Capen* v. *Stoughton, supra,* 365, it was said that ". . . the court had power at a subsequent term, in the exercise of a judicial discretion, on satisfactory proof that an erroneous

entry had been made on the docket through mistake, to order the case to be brought forward for the purpose of vacating the previous erroneous order, and making such disposition of the case as the rights of the parties might require."

The separation of the jury after rendering a sealed verdict which is inconsistent or defective has been held not to prevent the submission of the case to the jury for further consideration if the judge determines that nothing prejudicial to the cause of justice occurred during the separation. *Charles* v. *Boston Elev. Ry.* 230 Mass. 536, 542–544, and cases cited. *Turcotte* v. *DeWitt*, 332 Mass. 160, 166–167.

In the instant case the mistake obviously arose from a misunderstanding on the part of the jury as to the use of the verdict slips. There was a lapse of but five minutes between the reporting of the original verdict and the reassembly of the jury in the jury box. It is unlikely that anything occurred in that short intervening period which would ". . . imperil in the slightest degree the purity and absolute impartiality of the jury." *Charles* v. *Boston Elev. Ry., supra,* 544. Furthermore, the jurors were not asked to reconsider the merits of the case or alter the verdict upon which they had originally agreed, but merely to report their "intended" verdict in the prescribed manner. See *Holt* v. *County Bdcst. Corp., ante,* 363, 368.

We are of the opinion that it was within the power of the trial judge to recall the jury, instruct them in the proper use of the verdict slips, and request them to retire and act in accordance with those instructions.

We find no merit in the defendants' contention that the recording of the original verdicts for the plaintiff may have given "the jury the impression that the trial judge had selected one of the two contradictory verdicts rendered by them."

There is no need to discuss the exceptions to the denial of the defendants' motion for a new trial. See *Turcotte* v. *DeWitt, supra,* 167.

There was no error.

*Exceptions overruled.*