JOHN G. CARZIS & another vs. FRANK HASSEY & another.

Norfolk.   March 15, 1977. — January 13, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Civil*, Verdict, New trial. *Jury and Jurors.*

Where verdicts awarding $30,000 to each of two plaintiffs were regular on their face the judge had no power to order a new trial on the basis of representations made by the foreman of the jury a few days after trial that the jurors had intended the total recovery to be $30,000 rather than $60,000. [15–17]

TORT. Writ in the Superior Court dated February 7, 1974.

The case was tried before *Good, J.*, and a motion for a new trial was heard by him. Thereafter the case was tried before *Rutledge, J.*

*Charles J. Humphreys* for the plaintiffs.

*Charles W. O'Brien (Philander S. Ratzkoff & Mary M. Sullivan* with him) for the defendants.

GOODMAN, J. The plaintiffs, John G. Carzis (Carzis), owner of the building known as "Kimball's Shack", and Kimball's Lobster Shop, Inc. (the corporate plaintiff), owner of the contents of the building, brought this action against P.J. McDonough Insurance Agency, Inc. (the agency), and its executive vice-president, Frank Hassey (Hassey).[1] Carzis is the sole stockholder, as well as the president, treasurer, and clerk of the corporate plaintiff.

---

[1] This action (counts 3 and 6) was also brought against Anthony J. Moneikis, an employee of the agency, but a verdict was directed in his favor at the first trial of this case. The directed verdict in favor of Moneikis is not an issue before this court.

In count 1 of the complaint Carzis seeks damages from Hassey alleging that Carzis' building was destroyed by a fire while it was without insurance and that the loss was the result of a breach of duty by Hassey, an insurance agent and broker and Carzis' "insurance advisor," in failing to keep the building insured. Count 2 makes the same claim against the agency as Hassey's employer and principal. In count 4 the corporate plaintiff seeks damages against Hassey on the same grounds for the destruction of the contents of the building, and count 5 makes the same claim against the agency. The case was tried to a jury; motions for directed verdicts by Hassey and the agency were denied (see fn. 1); and on May 23, 1975, the jury returned verdicts as follows:—for Carzis against Hassey (count 1) $30,000; for Carzis against the agency (count 2) $30,000; for the corporate plaintiff against Hassey (count 4) $30,000; and for the corporate plaintiff against the agency (count 5) $30,000. On May 27, 1975, a separate judgment was entered on each verdict.

It is not disputed that the legal effect of these verdicts was to allow Carzis a single satisfaction of $30,000 against Hassey and the agency and to allow the corporate plaintiff a single satisfaction of $30,000 against those defendants, for a total of $60,000. See *Pion* v. *Caron*, 237 Mass. 107, 111–112 (1921); *Aronson* v. *Sol. & S. Marcus Co.*, 292 Mass. 389, 393, 395–396 (1935). However, on May 30, 1975, at the initiative of the plaintiffs (there had apparently been some courthouse gossip that the jury had intended a total satisfaction of $120,000) the trial judge, over the defendants' obligation, held a hearing in which he called in the foreman of the jury and questioned him as to the jury's intent. The foreman advised the judge that '[w]e felt it would be just $30,000 and that's all."[2] The

---

[2] The questioning ended as follows:

THE JUDGE: "And just to conclude, the jury verdict was intended to award $30,000 for all the losses that both plaintiffs claimed against the defendants in this case?"

FOREMAN OF THE JURY: "That is correct, your Honor."

judge, at the conclusion of the questioning, adjourned the hearing "leav[ing] counsel to their own [devices?]."

Thereupon the defendants filed a motion for a new trial which (in addition to the typical reasons) was based on an affidavit alleging in substance what had transpired at the earlier hearing. At the hearing on the motion on June 20, 1975, the judge stated that he would "give [the plaintiffs] ten days within which to file an acceptance of a verdict totalling $30,000, however that is done. And if you file that within ten days, then the motion by the defendant would be denied. . . . " The plaintiffs filed such an "acceptance" on June 30, 1975, unaware that on June 26, 1975, the defendants' motion for a new trial had been allowed. Subsequently on August 19, 1975, a notation was made on the docket stating the judge's reason for allowing the motion as follows: " . . . the Verdicts do not express the intention of the jury; the foreman, at a later date after trial informed the court that the jury intended to award the plff. $30,000.00 as a total award on all counts . . . "

Thereafter, a new trial was held and, on November 20, 1975, verdicts were directed for the defendants; judgments were entered dismissing the action. The plaintiffs appeal and contend that it was error to grant a new trial and that there was sufficient evidence to take the case to the jury at the second trial. We need deal only with the first contention.

We hold that the trial judge in the circumstances of this case could not order a new trial on the basis of the representations of the foreman of the jury as to the jury's intentions in rendering the four verdicts. Our conclusion is impelled by *Shears* v. *Metropolitan Transit Authy.*, 324 Mass. 358, 360 (1949), in which the court upheld the ruling of a trial judge that he was "without power" to interfere with verdicts regular on their face on the basis of affidavits by jurors presented to him on a motion for a new trial and a motion to amend the verdict. Those affidavits indicated that verdicts of $3,500 against two defendants (which, as in our case, permitted one satisfac-

tion) were intended by the jury to permit a plaintiff to realize $7,000. The court distinguished cases in which a mistake is manifest without resort to the testimony of jurors (see *Lapham* v. *Eastern Mass. St. Ry.*, 343 Mass. 489, 492 [1962]), and "the practice, more or less common in this Commonwealth, of inquiring of the jury, upon the return of the verdict and before it is recorded and before they are discharged, as to facts found by them, and of making then and there such corrections as are discovered to be necessary." *Shears* v. *Metropolitan Transit Authy.*, 324 Mass. at 360. Cf. *Lapham* v. *Eastern Mass. St. Ry.*, 343 Mass. at 492–493, in which the jurors were recalled within five minutes from the time they had first reported their verdicts; *Commonwealth* v. *Brown*, 367 Mass. 24, 27–28 (1975), in which the jurors remained "an undispersed unit, still within the control of the court."

The court, in the *Shears* case, pointed out that the affidavits did not indicate a clerical error in the verdicts. We apply what the court said there (at 361) to our case: So far as appears, the jurors intended to return a verdict of $30,000 for each plaintiff, and that is precisely what they did. There is nothing to show that they then intended that either plaintiff should receive less. They may have supposed that the plaintiffs could collect $30,000 in all, but that would not be a clerical error. As in the *Shears* case, inquiry into the intention of the jurors—here by way of the judge's questions and the foreman's representations rather than by the jurors' affidavits—was beyond the power of the trial judge. And the failure of the parties to object to the receipt of those representations did not obviate the trial judge's duty to refuse to consider them. *Commonwealth* v. *Meserve*, 156 Mass. 61, 62 (1892). Hughes, Evidence § 128, at 116–117 (1961).

Further, the trial judge's reason that a new trial should be granted—through based on matters he could not consider (cf. *Hannum* v. *Belchertown*, 19 Pick. 311, 313 [1838])—was that the total amount realized by both plaintiffs should be $30,000 rather than $60,000 or, put anoth-

er way, that at least some of the verdicts—either those for Carzis or those for the corporate plaintiff or all four—were excessive. Since it is thus clear that the new trial was "granted solely on the ground that the damages are excessive" the trial judge was required to give the "prevailing party . . . an opportunity to remit so much thereof as the court adjudges is excessive." Mass. R.Civ.P. 59(a), 365 Mass. 827 (1974), incorporating the remittitur provisions of G. L. c. 231, § 127, repealed by St. 1975, c. 377, § 109. See *Nicklas* v. *New Bedford,* 250 Mass. 471, 474 (1925); *Salter* v. *Leventhal,* 337 Mass. 679, 700 (1958); *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 344 (1972) (in which the verdict was excessive because of an erroneous instruction). Contrast *Vacuum Oil Co., Inc.* v. *Smookler,* 282 Mass. 361, 362, 366 (1933).

Accordingly, the order granting a new trial must be set aside, and the judgments resulting from the second trial must be vacated. See 11 Wright & Miller, Federal Practice and Procedure § 28.18, at 115 (1973). However, the plaintiffs have not argued that they are entitled to the verdicts originally entered and the judgments entered thereon; rather, they request that the verdicts be reduced in accordance with their "acceptance" filed in the Superior Court to provide a total satisfaction of $30,000. Such reduction will require an apportionment of damages by the trial judge between Carzis for loss of his building and the corporate plaintiff for loss of the contents. We see no difficulty in such an apportionment in this case, particularly since the plaintiffs have been willing to accept whatever apportionment the trial judge may make, and the defendants cannot be prejudiced by whatever apportionment is made. *Nicklas* v. *New Bedford,* 250 Mass. at 474. See *Colangeli* v. *Construction Serv. Co.,* 353 Mass. 527, 531 (1968); *Raunela* v. *Hertz Corp.,* 361 Mass. at 347. See also *Davidson* v. *Robie,* 345 Mass. 333, 342 (1963). The case is therefore remanded to the Superior Court for further proceedings and the entry of new judgments in accordance with this opinion.

*So ordered.*